Commonwealth ex rel. Beemer *v.* Beemer, Appellant.

Argued September 13, 1962.   Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Allen H. Krause,* for appellant.

*Philip S. Davis,* with him *Davis & Katz,* for appellee.

OPINION BY WATKINS, J., December 13, 1962:

This is an appeal from an order of the Court of Common Pleas of Lebanon County, in a habeas corpus action, by which the custody of Cynthia Beemer, age fourteen, at the time, and Michael Beemer, age nine, at the time, minor children of Richard L. Beemer, the relator, and Jeanne E. Beemer, his wife, the respondent, was awarded to the father relator, Richard L. Beemer.

The parties to the proceedings were married on August 24, 1946, in Chicago, Illinois. They resided together at various places from 1946 to 1959. For several years they resided in a home owned by them as tenants by the entirety in Palmyra, Pennsylvania. While living there, on October 4, 1959, as a result of marital difficulties, including the wife's interest in another man, she moved to Chicago, Illinois, taking the children with her. The children became homesick and the father was asked to come and get them and about Christmas 1959 they were returned to Palmyra where they lived for twenty months with their father. In September, 1961 the mother returned to Palmyra but only lived in the family home for a few weeks, when she left with the children to live in a nearby motel. The father continued to reside in the family home and tried to persuade the wife and children to return to live with him. His wife refused. This petition followed on October 3, 1961. After the hearings on the

petition, and prior to decision, she returned to Chicago, Illinois, with the children on or about March 5, 1962 without permission of the court, and in defiance of the continuing writ of habeas corpus.

On April 12, 1962, the court's order directed that the custody of the two children be awarded to the father. It further provided for visitation rights to be exercised by the wife in Palmyra, Pennsylvania; and further provided that the children were not to be removed from the jurisdiction without leave of court. The order further provided that the order should not take effect until one week after the school term was completed in Chicago, where the mother had placed them in school. The school term ended June 22, 1962 so that the order for the return of the children to Palmyra was effective on June 29, 1962. The children still reside with the mother in Chicago, Illinois.

Subsequent to this appeal, in July of 1962, a petition to strike off or to quash the appeal was filed by the relator-appellee on the ground that the appellant had failed to comply with the order of court awarding custody of the children; that in violation thereof took the children out of the jurisdiction; and despite the order of the court below directing the return of the children to the husband in Palmyra on June 29, 1962, continued to defy the order of the court below by maintaining custody of them in Chicago. She did this, although stating in writing: "I thoroughly understand that the children are and will remain under the jurisdiction of this court, when a decision is finally reached, —and if it is an adverse one for me I know that I must return them." No supersedeas was ever asked for. At the oral argument before this Court counsel for the appellant frankly admitted that the order had not been complied with and that the only excuse for noncompliance on the part of the appellant was that she was unable to persuade the oldest child to return to her father.

On August 16, 1962, a petition was filed with the court below asking for a rule on the respondent to show cause why she should not be adjudged in contempt of court and on the same date the court directed that the rule issue and depositions be taken. By an opinion, dated September 10, 1962, the court below, after hearing, adjudged the appellant to be in contempt of court.

The question raised by this motion to quash is of great importance. There are a rash of modern instances where court orders are disobeyed with impunity and respect for the law and the courts thereby weakened. It seems, therefore, that it is the duty of the appellate courts to see to it that every assistance is extended to the courts of the Commonwealth so that orders are meticulously carried out as otherwise the dignity of the judiciary, the majesty of the law and its enforcement are clearly undermined.

This is a clear case of violation of the order of court in removing the children, the subject matter of the habeas corpus action from the jurisdiction prior to decision and while under the court's writ of habeas corpus and a complete defiance of the order of the court after its decision awarding custody to the relator. No supersedeas was requested and counsel for the appellant, in oral argument, had no valid defense to his client's refusal to obey the order and the appellant was, in fact, adjudged to be in contempt of court by the court below.

As briefs for both counsel and our research indicate, the question of denial of appeal to those in disobedience of court orders or in contempt of court, for that reason, has not been decided in this Commonwealth. In regard to other jurisdictions there is a division of authority and the cases have been collected in an annotation of the law in 49 A.L.R. 2d 1425. This annotation at page 1428 says: "The decisions dealt

with herein are, however, not completely lacking in pattern. Indeed, with respect to the question whether an appeal may be dismissed where the appellant has failed to obey an order issued by the appellate court, the courts in all jurisdictions in which the issue has arisen have been virtually unanimous in holding that dismissal is warranted, even if not mandatory."

The majority of decisions in other jurisdictions deny appeal in custody cases where court orders have been disobeyed. This is clearly the modern view. *Kottemann v. Kottemann* (1957), 150 C.A. 2d 483, 310 P. 2d 49; *Cobb v. Cobb*, 78 Ohio L. Abs. 484, 153 N.E. 2d 536. Some that go the other way refuse to deny appeal on the ground that appellant, although disobeying the order, has not been held to be in contempt of court. *Palmer v. Palmer* (1891), 28 Fla. 295, 9 So. 657.

Other courts have held that the appeal is a matter of right which appellate courts are not free to deny. *McHan v. McHan* (1938), 59 Idaho 41, 80 P. 2d 29. However, the U. S. Supreme Court has held that the denial to one who has disobeyed a trial court's order of his statutory right of appeal violates neither the Fourteenth Amendment's guarantee of equal protection of the laws nor its guarantee of due process of law. *National Union of M. C. & Stewards v. Arnold* (1954), 348 U. S. 37, 75 S. Ct. 92.

There seems to be a pattern emerging from the cases concerned with the denial of an appeal to one in disobedience of a court order. Where the disobedience is a flagrant one and where the appellant has been held in contempt or given an opportunity to present an excuse for disobedience and the excuse is not acceptable, then a denial of an appeal should follow. The rationale of decisions dismissing an appeal from the appellant's disobedience of a trial court's order seems to be that it is contrary to the principles of justice to

permit one who has flaunted the orders of the courts to seek judicial assistance. *Knoob v. Knoob* (1923), 192 Cal. 95, 218 P. 568.

The excuse of the appellant that she could not persuade her daughter to return lacks credibility. This is one of the same children that requested the father to come and get them about Christmas time 1959. The wishes of this alleged defiant daughter were considered by the court below in its custody decision, as follows: "We observed and examined these children, and it is our opinion that Cynthia's costume and comments were not those of a fourteen (14) year old girl. Her characterization of her father as 'hard' is, in our opinion, a parroting of her mother's expression, for she candidly admits to a great hatred of her husband. . . . His daughter's complaint that he is 'too strict' falls on ears deadened by the present day outcry against parents who are not strict enough. In the complexity of life which surrounds us today, strictness is considered by us as a parental virtue, not a millstone."

It is a simple matter for the mother to twist the mind of a child. We had in *Com. ex rel. Lotz v. Lotz,* 188 Pa. Superior Ct. 241, 146 A. 2d 362 (1958), a case involving the refusal of a child to visit with the father in accordance with a court order and held that the order must be enforced and said: "If this were not true any child conspiring with the defendant in a custody action could completely nullify the custody order of the court." And most certainly in this case the failure to quash this appeal would permit such a result.

The paramount consideration in custody cases is the welfare of the children and this consideration may well seem to be lost in this maze of jurisdictional and contempt discussion. However, in other jurisdictions where similar problems have been discussed but where the situation is much less aggravated than in our case, the courts have found that a stay of proceedings to

permit the appellant to comply with the order and purge the contempt has been held to be a sufficient remedy.

However, the action of the appellant as set forth in this opinion indicates that such an order would be futile. The court below took into consideration the welfare of the children and if we did consider this appeal on the merits great weight would have been given to the disposition made by President Judge GATES, who had the opportunity of seeing and hearing the parties, the children and the witnesses. Custody orders are temporary in nature and subject to change if new circumstances affect the welfare of the children.

It is questionable if the court's process can reach her in Chicago, Illinois and although she is beyond the reach of the court below, in absentia, she has chosen to appeal to this Court. It may be concluded from the facts in this case that after hearing in the habeas corpus action, she took the children out of the jurisdiction to Chicago, Illinois to avoid a possible adverse order. And when it proved to be adverse, she took this appeal while continuing contumaciously to flaunt the order of the court for the same reason. Because, if our decision were to be adverse, she would continue her contemptuous conduct. True, the quashing of the appeal may not accomplish the enforcement of the order but it will most certainly not dignify this appeal with validity.

And now, December 13, 1962, the appeal is quashed.

DISSENTING OPINION BY WOODSIDE, J. :

By quashing this appeal, the majority has refused to pass upon the question of the children's custody. We have said many times that the *controlling* consideration in a custody case is the welfare of the children. In order to punish a parent for misconduct in ignoring a court order, the majority refuses to consider, let

alone decide, the issue of the children's welfare. I believe that the punishment for disobeying a court order is a matter for separate and independent consideration. It is a fundamental principle of law that the acts of parents, as for example agreements concerning support or custody, cannot be determinative of the rights of the children. See *Commonwealth ex rel. Heller v. Yellin,* 174 Pa. Superior Ct. 292, 101 A. 2d 452 (1953); *Commonwealth ex rel. Silverman v. Silverman,* 180 Pa. Superior Ct. 94, 117 A. 2d 801 (1955). The majority has here made what appears to me to be an unwarranted exception to this fundamental principle.

Furthermore, this Court is here usurping the power of the legislature by saying that there is no right of appeal in a case where the legislature says there is such right. This appeal is being quashed not because of any procedural defect, but solely because this Court thinks the appellant should not have the right of an appeal which the legislature has given her.

In *Cochran Appeal,* 394 Pa. 162, 145 A. 2d 857 (1958), the Supreme Court disposed of a custody case on the merits, ignoring the fact that after the Superior Court had affirmed the lower court's order the appellant had violated the order by removing the children to New Jersey.

The contemptuous conduct of the appellant in this case should be considered along with all the other evidence in deciding whether it would be to the children's best interest to be in the appellant's custody, but the contemptuous conduct should not be the determining factor to the exclusion of all other considerations.

I would consider the merits of this case, and on the merits I would affirm. I would not quash.