537 A.2d 840

**Jalal FATEMI, Appellant,**

v.

**Linda L. Brodbeck FATEMI now by Change of Name Linda L. Brodbeck.**

Superior Court of Pennsylvania.

Argued Sept. 21, 1987.

Filed Feb. 12, 1988.

102

104

Thomas S. Cometa, Wilkes–Barre, for appellant.

Anthony J. Martino, Bangor, for appellee.

Before CIRILLO, President Judge, and TAMILIA and BECK, JJ.

CIRILLO, President Judge:

This is an appeal from various orders entered in the Court of Common Pleas, Luzerne County following hearings on an emergency contempt petition. We affirm the court's order, as modified.

Appellant, Dr. Jalal Fatemi, is the natural father of two young boys, who are the subject of the instant custody dispute. Appellee, Linda Brodbeck, formerly Mrs. Fatemi, is the natural mother of the children.

Pursuant to an order dated June 24, 1986, Linda Brodbeck was granted partial custody of the children, consisting of every other weekend, five weeks during the summer, and various holidays. The order contained various other provisions, including the following: "As security to insure compliance with this Order, the deeds presently being held by this Court, and the lis pendens filed against such real estate [appellant's], shall continue in full force and effect."

On one weekend when the children were to be with their mother, appellee was unable to determine their whereabouts. Appellee subsequently filed a petition to hold appellant in contempt. A rule to show cause was issued on September 5, 1986. The rule ordered appellant to show cause why he should not be held in contempt, and why the children should not be removed from his custody and placed in the custody of their natural mother. Appellant was ordered to appear for the hearing set for September 8, 1986. Service of the petition and rule was made upon counsel of

record. Dr. Fatemi did not appear for the September 8 hearing, but was represented by counsel. At the hearing, Dr. Fatemi's counsel pointed out that it was his understanding that the lis pendens was against Dr. Fatemi's bare tract of land, and not against his house. Counsel also claimed that appellant had not been properly served pursuant to the applicable rules of court. The court subsequently granted appellee's request that the court issue a lis pendens "against the home as security for Dr. Fatemi under the court rules." The court then instructed counsel to take the appropriate steps to record this fact. The court scheduled another hearing, and ordered Dr. Fatemi to appear. Counsel informed the court that appellant's last known address was in Birmingham, Alabama.

The second hearing was held on September 19, 1986. Dr. Fatemi again did not appear. Counsel informed the court that Dr. Fatemi had fled the jurisdiction for his native country, Iran, and had taken the children with him. Counsel also informed the court that he had verbally advised Dr. Fatemi on two occasions of the proceedings to be held on September 19. Thereafter, appellant's counsel again objected to the notice procedure. Despite these objections, the court proceeded to hear the merits of the case. At the conclusion of the hearing the court issued several orders, from which appellant takes this appeal.

Appellant raises the following five issues on appeal: (1) Did the hearing judge abuse his discretion or commit an error of law when he issued a number of court orders against appellant who had not been served as required by Pa.R.C.P. 1915.12(a), (b), (c), and (d);

(2) Did the hearing judge abuse his discretion or commit an error of law when he held appellant in criminal contempt when appellant, at no time, appeared personally in or about the court;

(3) Did the hearing judge abuse his discretion or commit an error of law when he fined appellant the sum of $25,000, when appellant, at no time, was served in conformity with the applicable rules of procedure;

(4) Did the hearing judge abuse his discretion or commit an error of law when he ordered that a lis pendens be placed against all of appellant's real estate which included his home which he had listed with a Realtor; and,

(5) Did the hearing judge abuse his discretion or commit an error of law when he changed court ordered legal custody from appellant to appellee, without conducting a hearing with appellant present to determine whether or not the change in custody of the children would be in their best interests and permanent welfare.

■ We observe at the outset that this court could properly quash this appeal. We have previously held that where a parent has violated a custody order and the contempt is found to be flagrant, appeal may be denied. In *Commonwealth ex rel. Beemer v. Beemer*, 200 Pa.Super. 103, 188 A.2d 475 (1962), this court quashed an appeal where the mother violated the custody order, was adjudged to be in contempt of court, and then appealed. We stated there:

The question raised by this motion to quash is of great importance. There are a rash of modern instances where court orders are disobeyed with impunity and respect for the law and the courts thereby weakened. It seems, therefore, that it is the duty of the appellate courts to see to it that every assistance is extended to the courts of the Commonwealth so that orders are meticulously carried out as otherwise the dignity of the judiciary, the majesty of the law and its enforcement are clearly undermined.

*Id.*, 200 Pa.Superior Ct. at 106, 188 A.2d at 476; *see also National Union of Marine Cooks v. Arnold*, 348 U.S. 37, 75 S.Ct. 92, 99 L.Ed. 46 (1954) (denial to one who has disobeyed a trial court's order of his statutory right to appeal violates neither the Fourteenth Amendment's guarantee of equal protection of the laws nor its guarantee of due process of law).

We acknowledge the familiar tone of the facts this case. For this reason, and for the edification of the bench and bar, we address the merits of this case.

I

With respect to Dr. Fatemi's first argument, we point out that, contrary to his contention, the notice of the order to appear does comply with the form set forth in Pa.R.C.P. 1915.12(a). In addition, appellee's petition does allege facts, pursuant to Pa.R.C.P. 1915.12(b), which constitute willful failure to comply with the custody order. Appellant argues that since the custody order mentions nothing about obtaining the court's permission to change his (and the children's) residence, he is not in contempt, and therefore appellee has not complied with Rule 1915.12(b). This argument, however, ignores the language and purpose of the custody order.

The order provides that the mother has partial custody according to a specific schedule. In addition, the order states: "Neither party ... shall engage in any conduct which would serve to undermine the relationship of the children with either parent." Appellant's decision to retreat to Iran has not only violated the custody schedule, but has blatantly interfered with what the order attempted to preserve—the children's relationships with *each* parent. Appellant's actions have flagrantly undermined the mother/children relationship.

Dr. Fatemi also claims appellee failed to comply with Pa.R.C.P. 1915.12(c). Rule 1915.12(c) provides:

The petition shall be served upon the respondent by personal service or regular mail. ... If the respondent fails to appear [at the hearing], the court shall continue the hearing and may order personal service of the petition and notice of a new hearing date by the sheriff or may issue a bench warrant for production of the respondent in court and not for imprisonment.

Appellant's counsel objected several times to the court's decision to proceed with the hearing despite the language in Rule 1915.12(c) which provides that the hearing be continued if respondent fails to appear. At the conclusion of the hearing, the court ordered:

There will be an additional hearing on the motion and the rule, and *Dr. Fatemi is ordered to appear in Courtroom No. 4, Luzerne County Courthouse, at Friday, September 19, 1986, at 10:00 a.m.,* ... to receive further evidence on the emergency petition of Linda L. Brodbeck Fatemi, ... and the Rule to Show Cause issued on said petition [which states] as follows: Why he, Dr. Fatemi, should not be held in contempt of the Court Order of June 24th, 1986; further Rule to Show Cause why an additional weekend of partial custody should not be granted to the Petitioner; and, further a Rule to Show Cause why the children should not be removed from the custody of the father and placed in the custody of their natural mother.  [Emphasis added]

When questioned by appellant's counsel as to how service was to be made, the court stated:

Counsel for Dr. Fatemi shall notify him verbally and in writing of the hearing.  Counsel for the mother shall notify the Defendant by regular mail and also by certified and/or registered mail, return receipt requested, and also shall deliver to the Sheriff of Luzerne County, who shall deliver to the appropriate sheriff or other proper authority for serving legal documents in Birmingham, Alabama, a notice of the hearing including purposes set forth herein[.]

The court further instructed appellee's counsel to prepare the notice pursuant to Rule 1915.12 so as to avoid further technical problems.

It appears that the technical requirements of Rule 1915.-12 were in fact not met inasmuch as the rule and petition were originally served upon *appellant's attorneys* by regular mail, and not served upon appellant himself.  Obviously, this was done because appellant's whereabouts were unknown.  In addition, we note that Dr. Fatemi received actual notice of the September 8 hearing on September 5 by way of a telephone conversation with his attorney.  During that conversation, Dr. Fatemi told counsel that he would let him know whether he would be at the hearing.

Based on the unusual circumstances of the case, the court allowed the proceeding to continue in an effort to ascertain Dr. Fatemi's whereabouts and to formulate a proper method of service for the continued hearing, scheduled for September 19. In particular, the court noted its concern with the welfare of the children.

We remind appellant that our rules of procedure are to be liberally construed so as to secure a "just, speedy and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties." Pa.R.C.P. 126. Under the circumstances presented in this case, we are unable to find that the trial court committed an error of law or abused its discretion in proceeding with the hearing. Moreover, in light of appellant's actual notice of the hearing, and the court's scheduling of a second hearing, we are unable to conclude that Dr. Fatemi's "substantial rights" were affected in any way.

Dr. Fatemi also claims the trial court's order failed to comply with Pa.R.C.P. 1915.12(d). Rule 1915.12(d) provides: "After hearing, an order committing a respondent to jail for contempt of a custody, partial custody or visitation order shall specify the condition which must be fulfilled to obtain release of the respondent." This claim is meritless. The court's order clearly stated: "The condition of release from imprisonment, is that he shall deliver the children to the mother."

## II

As noted above, Dr. Fatemi failed to appear at the September 19 hearing, contrary to the court's order of September 8, 1986. The court found Dr. Fatemi had "willfully, deliberately, flagrantly, and by conduct which the Court under the circumstances considers outrageous, failed to appear at [the] hearing, despite numerous notices to him of the time, place, and date and purpose of the hearing." On appellee's motion, a bench warrant for the arrest of Dr.

Fatemi was issued pursuant to Pa.R.C.P. 1910.13. The court further ordered that appellant be committed to the Luzerne County Prison upon his apprehension, and "when he is committed, the Court to be notified, and another hearing will be set. The condition of release from imprisonment, is that he shall deliver the children to the mother."

The transcript of the proceeding reveals that the court was, to some degree, uncertain as to the characterization of the contempt order, noting finally that it was criminal contempt. Appellant argues on appeal that since he did not personally appear before the court at any time, it was error for the court to find him in criminal contempt.

■ The Pennsylvania Supreme Court has comprehensively explained the difference between civil and criminal contempt in the case of *In re Martorano*, 464 Pa. 66, 346 A.2d 22 (1975). The distinction between civil and criminal contempt is not determined by any particular act; rather, it is determined by the dominant purpose of the judicial response to contumacious behavior. *Id.*, 464 Pa. at 77–78, 346 A.2d at 27–28. If the dominant purpose of the court is to prospectively coerce the contemnor to comply with an order of the court, the contempt is civil. If, however, "the dominant purpose of the court is to punish the contemnor for disobedience of the court's order ... the adjudication of contempt is criminal." *Id.*, 464 Pa. at 78, 346 A.2d at 28.

■ When the court's dominant purpose is to coerce, the appropriate civil contempt penalty is "a conditional or indeterminate sentence of which the contemnor may relieve himself by obeying the court's order, while a criminal adjudication of contempt punishes with a certain term of imprisonment or a fine which the contemnor is powerless to escape by compliance." *Id.*, 464 Pa. at 79, 346 A.2d at 28 (citing *Shillitani v. United States*, 384 U.S. 364, 368–70, 86 S.Ct. 1531, 1534–35, 16 L.Ed.2d 622 (1966)). The distinction exists solely to determine what procedural rights the contemnor has and what penalties are available for the court to impose. Moreover, "a contemnor who will be sentenced to a determinate term of imprisonment or a fixed fine, which

he is powerless to escape by purging himself of his contempt, is entitled to the essential procedural safeguards that attend criminal proceedings generally." *Martorano,* 464 Pa. at 80, 346 A.2d at 29; *see also Barrett v. Barrett,* 470 Pa. 253, 262, 368 A.2d 616, 620 (1977) (crucial question to determine civil contempt is whether one has present ability to comply with conditions set by court to purge himself of contempt). In addition, our supreme court has set forth five factors whose presence often indicates civil contempt: (1) where the complainant is a private person as opposed to the government; (2) where the proceeding is a continuation of an original injunction as opposed to a separate and independent action; (3) where holding the defendant in contempt provides relief to a private party; (4) where the complainant primarily benefits from the relief requested; and (5) "where the acts of contempt complained of are primarily civil in character and do not of themselves constitute crimes or conduct by the defendant so contumelious that the court is impelled to act on its own motion." *Knaus v. Knaus,* 387 Pa. 370, 378, 127 A.2d 669, 673 (1956). The existence of these factors, however, is not dispositive. "Even where the same facts might give rise to criminal as well as civil contempt, each has its own distinct procedural rights; the two may not be casually commingled." *Barrett,* 470 Pa. at 253, 368 A.2d at 619.

Plainly, it may be argued that the facts of the case before us might have given rise to either criminal or civil contempt. The distinguishing factor here is that Dr. Fatemi holds "the key to the jailhouse door." *Bruzzi v. Bruzzi,* 332 Pa. Super. 346, 481 A.2d 648 (1984); *see also Brocker v. Brocker,* 429 Pa. 513, 241 A.2d 336, (1968), *cert. denied,* 393 U.S. 1081, 89 S.Ct. 857, 21 L.Ed.2d 773 (1969) (where the act of contempt complained of is a refusal to do some act ordered primarily for the benefit of a private party, proceedings to enforce compliance with a decree of court are civil in nature). Our review of the proceedings reveals that the purpose of the order to some extent was to vindicate the authority and dignity of the court. However, the dominant purpose was to coerce appellant into abiding by the order

and releasing the children to their mother. We thus conclude the court's label of criminal contempt was inappropriate where the court was conditioning punitive measures (commitment to county prison) on appellant's failure to comply with the court's orders (release of children to appellee). *See Neshaminy Water Resources Auth. v. Del-Aware Unlimited, Inc.*, 332 Pa.Super. 461, 481 A.2d 879 (1984) (confinement for civil contempt must impose a condition that the contemnor is capable of performing which has the effect of purging the contemnor of contempt). We therefore modify the trial court's order to correct this error. *See* 42 Pa.C.S. § 706 (appellate court may modify any order brought before it for review).

### III

■ Appellant also claims on appeal that the court erred or abused its discretion in fining him $25,000 when he was not served in conformity with the applicable rules of court. The order states:

> The Court further imposes a fine of $25,000.00 on Jalal Fatemi and that fund to be used for the purpose of locating the children and Jalal Fatemi and returning all of them to the jurisdiction of this Court. Any unused portion of that sum shall go equally to each of the children and placed in an appropriate account, for their general welfare, including, but not limited to food, clothing, shelter, education, medical attention or other necessities of life.

■ Each court is the exclusive judge of contempts against its process, and on appeal its action will be reversed only when a plain abuse of discretion occurs. *Id.*, 332 Pa.Superior Ct. at 469, 481 A.2d at 883. The trial judge entered this order at the conclusion of the second hearing on September 19. Our discussion in Part I above reveals that Dr. Fatemi was in fact properly served with notice of this second hearing according to the applicable rules of court. In addition, we point out that a court may impose an unconditional fine upon the contemnor in order to encour-

age future compliance for the benefit of the injured party. *Schnabel Assoc. v. Building & Constr. Trades Council,* 338 Pa.Super. 376, 487 A.2d 1327 (1985); *see also Brocker v. Brocker,* 429 Pa. 513, 241 A.2d 336 (1968), *cert. denied,* 393 U.S. 1081, 89 S.Ct. 857, 21 L.Ed.2d 773 (1968) (a court may, in a proceeding for civil contempt, impose the remedial punishment of a fine payable to an aggrieved litigant as compensation for the special damage he or she may have sustained by reason of the contumacious conduct of the offender). Accordingly, we find no abuse of discretion.

## IV

Appellant next claims that the court erred or abused its discretion in ordering a lis pendens be placed against his home. A lis pendens does not establish an actual lien on the property. What it does is give notice to third persons that any interest they may acquire in the property pending the litigation will be subject to the result of the action. *See* Goodrich–Amram 2d § 1504(a). Dr. Fatemi claims the court had no authority to proceed without him and without giving him an opportunity to be heard. This argument is meritless. Appellant was given an opportunity to be heard but made himself unavailable to the court and disregarded the court's order to appear. We find the court's order of special relief was appropriate under the circumstances. *See* Pa.R.C.P. 1915.13.

## V

Finally, Dr. Fatemi claims the hearing court erred or abused its discretion in transferring legal custody of the children to appellee without conducting a hearing with appellant present to determine whether change in custody was in the best interests of the children. Although seemingly lost in this tangle of contempt and procedural discussion, the paramount consideration in this case, as in all child custody disputes, is the best interests and welfare of the children. *Albright v. Commonwealth ex rel. Fetters,* 491

Pa. 320, 421 A.2d 157 (1980); *Burke v. Pope*, 366 Pa.Super. 488, 531 A.2d 782 (1987).

■ The scope of review in a child custody case is broad and, though it requires this court to accept the trial court's findings of fact unless they are unsupported by the evidence, it allows the reviewing court to draw its own inferences and deductions from the facts as the trial court has found them. *Commonwealth ex rel. Spriggs v. Carson*, 470 Pa. 290, 295, 368 A.2d 635, 637 (1977); *see also In re Donna W.*, 325 Pa.Super. 39, 472 A.2d 635 (1984) (en banc) (broad scope of review in custody case, as distinguished from abuse of discretion standard, is essential if the appellate court is to fulfill its responsibility to children).

In *Commonwealth ex rel. Robinson v. Robinson*, 505 Pa. 226, 478 A.2d 800 (1984), our supreme court directed that appellate review in custody cases be confined to the following principles:

> [O]ur law has long recognized that the scope of review of an appellate court reviewing a custody matter is of the broadest type ... Thus, an appellate court is not bound by deductions or inferences made by a trial court from the facts found; ... nor must a reviewing court accept a finding which has no competent evidence to support it ... However ... this broader power of review was never intended to mean that an appelate court is free to nullify the factfinding function of the hearing judge ... [but, instead, is to remain] within the proper bounds of its review and [base a decision] upon its own independent deductions and inferences from the facts as found by the hearing judge.

*Robinson*, 505 Pa. at 236, 478 A.2d at 805–06 (citations omitted).

The *Robinson* court concluded that appellate review does require this court to determine whether the trial judge's conclusions are supported by the factual findings, but warned that this court may not interfere with those conclusions *"unless they are unreasonable in light of the trial court's factual findings. Bohachevsky v. Sembrot*, 368

Pa. 228, 81 A.2d 554 (1951); and, thus, represent a gross abuse of discretion, *Carson.*" *Id.*, 505 Pa. at 237, 478 A.2d at 806.

We are somewhat hindered at the outset without the benefit of a trial court opinion. However, under the circumstances of this case, remand for the filing of an opinion would be both inappropriate and meaningless. We find the record otherwise sufficient to enable us to render effective appellate review. *See Commonwealth ex rel. Husack v. Husack*, 273 Pa.Super. 192, 417 A.2d 233 (1979); *see also* Pa.R.A.P. 1925(a) ("if the reasons for the order do not already appear of record," the trial judge is required to "file of record at least a brief statement, in the form of an opinion, of the reasons for the order ... or shall specify in writing the place in the record where such reasons may be found.").

As we have noted above, this court is bound to accept the trial court's findings of fact, providing, of course, that these findings are supported by the evidence. *Robinson*, 505 Pa. at 236–37, 478 A.2d at 806; *see also In re Donna W.*, 325 Pa. Super. at 39–41, 472 A.2d at 635. The court found that taking the children to Iran, "with such turmoil, unrest, civil disorder, military acts of warfare, and such, ... evidenced a total disregard for the welfare of the children" and placed their lives in danger. The court took judicial notice of the fact that Iran and Iraq have been in open conflict for many years. Generally, matters of history, if sufficiently notorious to be the subject of general knowledge, will be judicially noticed. *See In re Estate of Belemecich*, 411 Pa. 506, 192 A.2d 740 (1963), *reversed on other grounds, Consul General of Yugoslavia at Pittsburgh v. Pennsylvania*, 375 U.S. 395, 84 S.Ct. 452, 11 L.Ed.2d 411 (1964).

The court also found Dr. Fatemi's actions indicated a "personal and selfish motive to satisfy his own desires contrary to the welfare of the children," and that his conduct clearly displayed a desire to have the children deprived of the care, comfort, love and affection of their

mother. Moreover, the court found that Dr. Fatemi's claim that he moved with the children to Alabama for the purpose of locating himself at an appropriate hospital "was obviously a fictitious excuse" resulting not from his effort to improve his surgical skills, but from his effort to destroy the mother/children relationship.

Based on our review, we conclude the trial court's findings are fully supported by the evidence in the record. The fact that these children are the focus of adult conflict is extremely troublesome, and this situation is regrettable and not easily resolved. However, our concern here today is not with conflict between parents or countries, but with the safety and welfare of these children. Their need for continuity of relationships, surroundings and environmental influence is essential to their normal growth and development. *See* J. Goldstein, A. Freud, & A. Solnit, *Beyond the Best Interests of the Child* (1973). It is important in a child's life that he or she have a "stable relationship with an established parental figure and a known physical environment." *Gerber v. Gerber*, 337 Pa.Super. 580, 586, 487 A.2d 413, 416 (1985).

Based on our review, we conclude that the children's safety and stability justifies an order transferring custody to the mother, with the father's visitation schedule to be determined when he appears before the court. An arrangement that maintains as full a relationship as possible between the children and *both* parents, or at least allows for such, is in the children's best interests. Dr. Fatemi cannot effectively eliminate the mother from the children's lives.

We recognize the possibility that our decision today may further frustrate Dr. Fatemi and dissuade him from returning to the United States. We remind him, however, and appellee, that the children are the victims here, and will continue to be for as long as this conflict endures.

Affirmed, as modified.

TAMILIA, J., concurs with an opinion.

TAMILIA, Judge, concurring:

I concur in the result. While I agree with the majority's disposition, I take issue with its reliance on *In re Donna W.*, 325 Pa.Super. 37, 472 A.2d 635 (1984) (broad scope of review in custody case as distinguished from abuse of discretion standard is essential if the appellate court is to fill its responsibility to children.) I believe the scope of review applied in *Donna W.* and its genre have been repudiated by the Pennsylvania Supreme Court in *Robinson v. Robinson,* 505 Pa. 226, 478 A.2d 800 (1984) and *Lombardo v. Lombardo,* 515 Pa. 139, 527 A.2d 525 (1987). *See Fatemi v. Fatemi,* 339 Pa.Super. 590, 489 A.2d 798 (1985) (Concurring and Dissenting Opinion by Tamilia, J.).

I would also hold that snatching of his child, in derogation of a custody Order, is prohibited under the Uniform Child Custody Jurisdiction Act, 42 Pa.C.S.A. § 5341 *et seq.,* and the Parental Kidnapping Prevention Act, 28 U.S.C. § 1738A, and appellant is technically a fugitive. This is particularly so in view of the fact that by violating the conditions of the custody Order, appellant is subject to prosecution for violating 18 Pa.C.S. § 2904, Interference with Custody of Children. As such, he should have no right to appeal, as would be our finding in a criminal case.

To permit him to appeal and for the Court to consider the case on the merits is to give him a windfall. Under these circumstances, he need not abide by the law and face the court in an open and fair adversary proceeding while maintaining the benefit of a full appellate review, which might resolve some procedural defect in his favor relieving him of the sanctions imposed and ignoring his flouting of the law.

This is particularly of great concern to this Court as the issues relating to custody and partial custody were fully litigated in the trial court and in this Court on appeal. *See Fatemi, supra.* In the earlier proceeding, the mother had appealed a custody Order in favor of the father and for less restrictive partial custody. While the majority of the panel directed a lessening of the partial custody restrictions, the Order in favor of appellant prevailed. This was in spite of

the fact that while the mother had custody, the father had taken the children to Iran from April 1980 to December 1980, without informing the mother. The children were returned only after the mother met with appellant in Switzerland and agreed to give him full custody with daily visitation rights to the mother in the father's home. The appellant appears determined to be a law unto himself in regard to the custody of his children and should be dealt with accordingly.

I have no quarrel with the result achieved by the majority but believe the message would be stronger to appellant and his ilk that by child snatching and becoming a fugitive, they forfeit the benefits of the appellate procedure and have waived any right to appeal. A party, who absconds to a foreign country with children who are totally beyond the reach of American justice and who are impervious to diplomatic pressures, should not also have the succor of appellate review. Denying appeal fixes the judgment of the lower court and provides the only remedy available to the wronged person, that is a climate for negotiation whereby to gain relief from heavy sanctions and to regain the benefits of our society, he must repudiate his vicious and destructive self-help approach and accede to reasonable and acceptable standards of conduct.