## Simpson *v*. Simpson, Appellant.

248

Argued April 26, 1961. Before Jones, C. J., Bell, Musmanno, Jones, Cohen, Bok and Eagen, JJ.

*Walter Stein,* with him *Josephine H. Klein,* and *Berger & Stein,* for appellant.

*Joseph Head,* with him *Theodore H. Lunine,* and *Swartz, Campbell & Henry,* for appellee.

OPINION BY MR. JUSTICE BOK, June 26, 1961:

This is an action in equity which, like Pope's needless alexandrine, has dragged its slow length along for fourteen years. After such time the integrity of the law itself is in jeopardy, and we will not seek for niceties to impugn the maxim that it is in the interest of the public that litigation shall cease: *Sellers v. Hanratty,* 343 Pa. 316 (1941), 22 A. 2d 697.

The complaint asks an accounting, the return of various property, both real and personal, and incidental adjustments of the affairs between the parties. There is an answer with new matter, and a defendant's request for the return of real and personal property and incidental relief. Testimony was taken in March, 1947, and December, 1948; an adjudication was filed on May 9, 1949; final decree is dated March 16, 1950; accounts were filed by both parties; a master was appointed in February, 1951, to partition certain properties under the decree; an auditor was appointed to audit the accounts; the master in partition reported; the auditor took testimony and reported; the plaintiff died in August, 1956, and an administrator c.t.a. was appointed for him; three appeals were taken to this court, in 1949, 1950, and 1952, and all were withdrawn; the properties were sold to bona fide purchasers for value.

The final decree of the court below in 1950 directed partition of certain properties and an accounting by both parties after May, 1946. This was done and approved, and the balance of proceeds resulting from the partition was ordered into the hands of an auditor. The ultimate decree appealed from confirms the auditor's reports, awards the fund, and fixes costs. This occurred in 1960 and defendant has appealed the overruling of her exceptions to the auditor's reports.

She raises various questions. The first is that the court had no right to order partition because the real estate is not all in the county of the forum; two are in Philadelphia County, one in Montgomery, and two in Bucks. There is no merit in this argument.

The Act of February 20, 1854, P. L. 89, 12 PS §1767 (clarified by the Act of May 14, 1874, P. L. 156, 12 PS §1769), provides, pertinently: "All the courts of this commonwealth now having jurisdiction in matters of partition, shall have power to entertain suits and proceedings, whether at law or in equity or otherwise, for the partition of real estate, or the recovery of dower or the widow's third or other part, although the lands to be divided or recovered may lie in one or more counties of this commonwealth: Provided, That such proceeding, intended to embrace lands in more than one county, shall be brought only in the county where a decedent, whose land is to be divided, had his domicile, or where the homestead, or larger part of the estate in value shall be situated . . ."

This Act was suspended by the Pa. Rules of Civil Procedure, where, in Rule 1552, Venue, it is provided: "An action for the partition of real property, including an action in which the Commonwealth is a party, may be brought in and only in a county in which all or any part of any property which is the subject matter of the action is located."

The court below properly said: "In Nevin v. Catanach, 264 Pa. 523 (1919), a partition action involving land located in several counties where the conditions of the proviso were not pleaded in plaintiff's Bill, the Court stated (at page 528) : '. . . (A)fter a general appearance, they [defendants] were not in a position to enter pleas in bar to the suit upon the ground of a lack of such averment, which is practically what was attempted.' (Citations omitted) Since a general appearance by the parties cannot cure defective subject matter jurisdiction (Nevin v. Catanach, supra), it is perfectly clear that the Court construed the proviso clause as conferring venue, rather than conditioning the Court's jurisdiction."

Jurisdiction of subject matter relates to the competence of a court to hear and determine controversies of the general nature of the action before the court; jurisdiction of the person is ordinarily acquired by service upon him of the court's process within the territorial limits of its authority; and venue is the right of the party sued to have the action brought and heard in a particular judicial district: *County Construction Co. v. Livengood Construction Corp.*, 393 Pa. 39 (1958), 142 A. 2d 9; *McGinley v. Scott*, 401 Pa. 310 (1960), 164 A. 2d 424.

Defendant filed an answer, with new matter, asking specific relief of plaintiff for the Bucks County farm, which is the real nub of the controversy, and she has taken and withdrawn three appeals to this court before the current one. It is too late to object to venue now.

In any event, the court below had personal jurisdiction of the defendant and could order her to act or refrain from acting with respect to property within or without the forum county: *Drummond v. Drummond*, 402 Pa. 534 (1961), 167 A. 2d 287; *De Luca v. De Luca*, 388 Pa. 167 (1957), 130 A. 2d 179; *Cohn v. Weiss*, 356

Pa. 78 (1947), 51 A. 2d 740. Also, if there is jurisdiction, as there is, and if there is a prayer for further general relief, equity will apply such measures as will end the litigation: *Hayden v. Hayden*, 354 Pa. 11 (1946), 46 A. 2d 502. See *Butler v. Butler*, 377 Pa. 388 (1954), 105 A. 2d 62. Hence the absence of a specific prayer for partition could not prevent the court below from applying it under the prayer for general relief.

Appellant argues that partition was an improper remedy because the parties held the properties as tenants by the entireties. To do so, of course, they had to be man and wife, as the entireties tenure is peculiar to the state of marriage. The facts are that defendant married a man named Lipeczky in 1933, was deserted by him in 1935, and was divorced by him in 1943. Meanwhile his father told her, when she inquired, that his son was dead; however innocent her belief in his death may have been, if he was not dead in fact she could not become the plaintiff's common-law wife: *Frederick v. Southwick*, 165 Pa. Superior Ct. 78 (1949), 67 A. 2d 802. In 1936 she began living with the plaintiff as man and wife, and they separated in May, 1946. She did not act on her supposed freedom to marry plaintiff when she heard that Lipeczky was dead, nor even when she learned that he was alive and had divorced her. In any event she could not have held property with plaintiff as tenants by the entireties from 1936 to 1943, since she had a living and undivorced husband, and after 1943 the court below, on ample evidence, found that no common law marriage existed.

Her counsel began the hearing in 1947 by saying: "By the entireties—and no such thing exists, because there was not even a common law marriage." But his client later said that she married plaintiff, describing the procedure in two ways: once by saying to him, "I have always taken you as my husband", and later, more carefully, "I feel the same way, I take you for my hus-

band." The court called counsel's attention during the hearing to her statement: "I never lived with him as his wife. I was known as Mrs. Simpson." Witnesses McElhatten, Colley, Townsend, and Bunton reported her as saying that she and Simpson were not married: Colley testified that she told him that she and a Peter Tully were married. In his adjudication the Chancellor says this: "On two separate occasions when a common law marriage was suggested, she arose from her place beside her counsel, interrupted the proceedings, and vehemently stated that she never was married to the plaintiff. When the trial was resumed about six weeks later, she contradicted this testimony directly and said that she and the plaintiff were living as husband and wife; that they assumed that relationship, not initially, when many of the transactions which are the subject of controversy occurred, but following May, 1943 when she learned of her divorce from her lawful husband, Lipeczky."

Thus there is a wealth of evidence to support the Court's finding against a common-law marriage, and it follows that partition was proper.

Appellant argues that the purchaser of the valuable farm in Bucks County, a man named Hill, is not a bona fide purchaser for value without notice because he knew about appellant's resistance to the sale. The argument is based on lack of jurisdiction, but since we are upholding jurisdiction the contention fails. We will not order the unwinding of any of the real estate sales involved, since to do so would disturb the rights of bona fide purchasers for value, and especially since the sale of the Bucks County farm occurred ten years ago.

Appellant complains that the court was indiscreet in ordering partition before an accounting. However we might look at such a question as a fresh problem, it is now clear that she waited eight years before making a specific objection. In such state of affairs we

see no equities running her way. In *Sellers v. Hanratty,* supra (343 Pa. 316), we said: "The real complaint of defendant on this feature of the case is, as we gather it, that certain preliminary steps necessary in a partition proceeding were not taken. Under the circumstances here present, considering the long litigation, the effort spent, the cost and the amount involved, we think it would not be the proper or the just course to send the case back, so that the preliminary steps may be carried out when, if they should be, we would be just where we are today, with an order for the sale of the property. One of the real purposes of the proceeding was to compel an account and as such equity had unquestionable jurisdiction. . . ."

We are not impressed by appellant's attack on the Chancellor's finding that the interests of the parties in the fund, resulting from the partition of the real estate and the division of the bank accounts, are equal. Since it has been her effort, though not consistently, to make a common-law marriage out of her relationship with the plaintiff, such an effort can be construed as evidence of intention to create at least a joint account with right of survivorship: *Madden v. Gosztonyi Savings and Trust Co.,* 331 Pa. 476 (1938), 200 A. 624. And plaintiff spoke of their "joint account" and admitted that he lived with defendant as man and wife and held her out as such.

"An estate by the entireties consists of the five unities of time, title, interest, possession and marriage, all of which must coexist. A joint tenancy must contain the four unities of time, title, interest and possession. A joint tenancy thus possesses all of the unities of tenancy by the entireties except the unity of marriage": *Frederick v. Southwick,* supra (165 Pa. Superior Ct. 79). Where the evidence fails, as it does here, to establish a tenancy by the entireties, the parties take such title as is most appropriate under the circumstances:

*Maxwell v. Saylor,* 359 Pa. 94 (1948), 58 A. 2d 355; *Cochrane's Estate,* 342 Pa. 108 (1941), 20 A. 2d 305. This is a question of fact and intention, and there is plenty of evidence in the voluminous record before us to justify the court's conclusion that the most appropriate relationship between these two people was that of joint tenancy with right of survivorship. It may not be possible to balance the score between them to an even dime, but her status as a real estate broker and her success at it, coupled with his credit at the bank because of his grandfather's estate, their living together, and their maintaining joint title, is solid and satisfactory reason to call their business relationship a joint and equal enterprise. It is not feasible to trace back pennies over twenty-five years.

Appellant has raised other questions: an objection to the date of May, 1946, as the beginning of the accounting period, this being the point in time when the parties separated; an objection, not raised until 1959, to the sale of the Bucks County farm because she had not been given a chance to buy it at its appraised value, although the docket entries show, under date of November 28, 1951, that she offered in open court to buy the property at a price higher than that reported for confirmation by the Master in partition; that since plaintiff is dead she should take the whole estate on the court's theory of joint tenancy with survivorship, per my et per tout, although their rights had been adjudicated, without appeal, long before the plaintiff's death.

These questions are ghostly. The adjudication was filed on May 9, 1949, exceptions to it by both parties were dismissed in October, 1949, an appeal here was taken on December 22, 1949, and withdrawn March 15, 1950. On March 16, 1950, the court below entered its final decree and eight days later another appeal was taken here, only to be withdrawn on May 3, 1950. A

year later, on May 3, 1951, the Master in partition filed his return. The Bucks County farm was sold in this year. Defendant was given her right to buy the farm as above set forth, and on May 7, 1952, she appealed here for the third time but withdrew it on November 17, 1952. On December 8, 1953, the court confirmed the report of the Master in partition and directed payment of the balance in his hands to a newly appointed auditor.

All of the basic questions in the case could have been resolved on these abortive appeals. Instead of that, she has let the record accumulate while the auditor held hearings, petitions were filed, the record was remanded to the auditor for further testimony, his report was filed on December 5, 1955, and supplemental reports on May 27 and August 20, 1959. Exceptions by both parties were dismissed on September 24, 1959, and a decree entered adopting the auditor's findings, awarding $4342.99 out of the balance of $8537.04 to defendant and any excess received in like proportion, and directing that costs shall be divided equally and deducted from the awards. It was on August 21, 1956, that plaintiff died, although a suggestion of his death was not filed until December 21, 1959.

The case was effectively adjudicated when, following its final decree of March 16, 1950, the court below confirmed the report of the Master in partition on December 8, 1953. The auditor was appointed to mop up rights already adjudicated and to present a balance for distribution. To unwind the sale of the farm and uproot the rights of the bona fide purchaser who bought it, and to open up the accounting back to 1936, with the plaintiff dead and the Dead Man's Act blocking the witness chair, would be unnecessary and unfair, for appellant could have tried out her rights on one of her three former appeals, when the spoor of the case was fresh and young. She must be sternly foreclosed.

The court below has handled this complex case with meticulous and intelligent care, and if there is any error it lies in the prodigious length of the proceedings, a condition for which appellant is primarily responsible.

The decree now appealed from appears to be the last one of record, that of September 24, 1959, dismissing exceptions to the auditor's reports, awarding $4342.99 to defendant and presumably $4194.05 to the administrator c.t.a., and any excess over $8537.04 in like proportion. The record must be remanded in order to determine whether there is any such excess and to award final amounts.

The decree is affirmed and the record is remanded for the purpose indicated. Costs to be borne equally by the parties and deducted from the awards.