In re Estate of JOHN F. McCRACKEN.

*New Castle, May 20, 1966.*

*Charles K. Keil,* of Bayard, Brill, Russell & Handelman, Wilmington, and *Paul D. Sulman,* Philadelphia, Pa., for petitioner, Clara McCracken.

*William T. Lynam, III,* of Wilson & Lynam, Wilmington, for defendant, Florence M. McCracken.

SEITZ, Chancellor: Petitioner, the alleged widow of John F. McCracken ("deceased"), filed this action on behalf of herself and their three children. They claim and seek to obtain interests in the real and personal property of the deceased, who died intestate. The other party in interest is the defendant, Florence M. McCracken, who also claims to be the widow of the deceased. She is the administratrix of the estate.

This is the decision after final hearing in a most bizarre case. It can best be followed, if not understood, by a chronological development of the facts.

Petitioner and the deceased were legally married in 1950 and lived in Pennsylvania until 1959 when the deceased left the home. The three children of the marriage remained with petitioner in Philadelphia. The deceased was under a continuing order of a Philadelphia court dated July 20, 1959 to provide support for petitioner and the children.

The deceased brought a divorce action against petitioner in Pennsylvania in 1959 but the action was resisted and was dropped.

In January of 1960 the deceased purported to marry the defendant in Pennsylvania. I find that at such time the deceased was legally married to petitioner and lied to the defendant when he told her that he had been divorced. I further find that defendant accepted this information in good faith when she went through the marriage ceremony. Defendant's counsel tacitly concedes that the marriage was void under Pennsylvania law.

Apparently immediately after the void marriage ceremony the deceased and the defendant came to Delaware and purchased a home titled "John F. McCracken, Jr. and Florence M. McCracken, his wife". They thereafter lived together as husband and wife. The deceased worked in and around Wilmington and for a period of time operated a shuttle service to the Philadelphia Airport. Because of failing health he sold the business and purchased a liquor store which he operated under the corporate form until his death in 1965.

At some date after the deceased purported to marry the defendant, but prior to 1963, the defendant discovered that the deceased had not divorced his first wife. Because she was considered as a married woman in the community and because her small child by a prior marriage was living with them and considered the deceased as her father, she decided not to separate. Thus, their relationship then became illicit to her knowledge. The matter was one of continuing concern between the defendant and the deceased. In May of 1963 the deceased commenced an Alabama divorce proceeding against petitioner. He caused a paper to be filed in the Alabama divorce proceedings purporting to show acceptance of service by petitioner. The document was purportedly witnessed by petitioner's brother. The divorce was granted on May 24, 1963.

In March of 1964, the deceased and defendant went through a marriage ceremony in Virginia while living in Delaware. On May 8, 1964, the deceased and defendant purchased a second property which was titled apparently the same way as their residence property. The deceased died in 1965 and these proceedings followed.

■ There can be no question of this court's jurisdiction to entertain an action for the distribution of a personal estate. See *Glanding v. Industrial Trust Co.*, 28 *Del.Ch.* 499, 45 *A.2d* 553. The same is true of an action to partition realty. *Bradford v. Robinson*, 7 *Houst.* 29, 30 *A.* 670.

This court's jurisdiction being clear, I next consider the rights of the various parties in interest in the property in which the deceased had an interest at his death. Since petitioner and the children would have no interest in the real estate if the deceased and the defendant were validly married at the date of his death, I turn first to the issue of their then marital status.

After evaluating the evidence I am satisfied that the deceased never went to or remained in Alabama with any intent to then become a resident or domiciliary of Alabama. The evidence overwhelmingly supports this conclusion. Moreover, and of great significance, I find that the deceased caused a fraud to be committed on the Alabama court when he caused the notice of petitioner's appearance to be filed with the Alabama court. I say this because I am satisfied that the signatures of the petitioner and her brother as witness are forgeries. I believe the deceased caused these forgeries to be made. I find that petitioner had no knowledge of the Alabama proceedings either at the time they were instituted or at any time prior to the death of the deceased. I might note that the support order of the Philadelphia court for her benefit and the benefit of the children continued in effect until his death.

■ Under the foregoing circumstances I am satisfied that the Alabama divorce decree must be treated as a nullity in determining the rights of the parties. It follows that his "second" marriage to the defendant in 1964 was also a nullity because he then had a wife living. Thus, I find that the deceased was the husband of the petitioner at the date of his death.

I proceed now to decide the rights of the parties in the property in which the deceased had an interest at his death. I first consider the mortgaged real property. As noted, title to their residence property purchased in May of 1960 was held as follows: John F. McCracken, Jr. and Florence M. McCracken, his wife * * *".

There is no doubt that property titled as indicated above would, under Delaware law, be considered as held by the entireties were the parties married. However, since the parties were not legally married, it follows under Delaware law that such language would make the parties tenants in common (see *Loper v. Loper, Del.Super.* 170 *A*. 804) unless petitioner and her children are estopped to assert that the title was not held by the entireties.

While the Delaware courts apparently have not been required to decide whether the doctrine of equitable estoppel can be applied in this area, compare *Loper v. Loper,* above, I am satisfied that in a proper case the application of the doctrine is warranted. See *Pierce v. Hall,* 223 *Or.* 563, 355 *P.2d* 259; 119 *A.L.R.* 515. As the court said in the *Loper* case:

> "It is not to be doubted that the principle of estoppel is founded on morality and justice. It is concerned with conscience and equity. It is a protection thrown around an innocent person upon whom deception has been practiced; but, where there is no deception, there can be no estoppel."

I am satisfied that defendant married the deceased in the good faith belief that he was free to marry. I find that the deceased lied to her when he told her he had been divorced. Thus, the deceased certainly practiced a deception upon the defendant. I find that the defendant was unaware of the deception when the residence property was purchased. I note that defendant worked and contributed to the family finances. Under these circumstances, I believe those claiming through the deceiving party must here be estopped to deny the legal effect of the record title. I therefore conclude that the petitioner and the children have no interest in the real estate purchased in 1960.

I next consider the real estate purchased in 1964 and titled in both names. Although this property was purchased after the deceased "obtained" the Alabama divorce and after they went through a second

marriage ceremony, I am satisfied from a realistic evaluation of the evidence that defendant must be charged with an awareness of the doubtful nature of the attempt to obtain the Alabama divorce. She must have known that he had no intention of going to Alabama to live despite her testimony concerning his attempts to secure employment there. Whether she knew about the forgeries I do not decide. However, she realized that the deceased was providing support and she must have been aware that his wife was not about to give him his liberty without a fight. Consequently, I cannot find that at the time the second piece of real estate was purchased the defendant was an innocent victim. Indeed, she and the deceased lived together many months after the Alabama "divorce" became final before going through another marriage ceremony. Under all the circumstances I am unable to apply the equitable estoppel doctrine to the disposition of this property.

I conclude that at the date of his death the deceased and the defendant held the second property as tenants in common. *Loper v. Loper*, above. It follows that appropriate proceedings are required to give the petitioner and the children their interest in the portion of the real estate owned by the deceased. Of course, all such rights are subject to the rights of the mortgagee and any legitimate equities the defendant may assert. See *Loper v. Loper*, above.

I next deal with the personal property in which the deceased had some interest at his death.

I first consider the stock in J. F. M., Inc., which operated the liquor store. It is agreed that this stock was held in the names of "John F. McCracken and Florence M. McCracken, as joint tenants and not as tenants in common with right of survivorship".

The language on the certificates explicitly excludes a tenancy in common. Because the court has found that the deceased and the defendant were not married, it does not follow that the language on the stock certificates created a tenancy in common. I pause to note that the language in the deed involved in the *Loper* case is not comparable to that appearing on these certificates. Had the deeds here involved and the deed in the *Loper* case contained language similar to that on

these stock certificates, a very serious question would have been involved, *viz.,* there being no marriage, why should the language of joint tenancy not be honored. This would be true, *a fortiori,* as to personal property, since the statute favoring tenancies in common over joint tenancies has no direct application to personal property. See 25 *Del.C.* § 701. Although the language "with right of survivorship" followed the words "tenants in common" rather than "as joint tenants", I am satisfied that there is no such ambiguity as to intent as to call for some other construction of the language.

I conclude that the language of the stock certificates under the present facts created a joint tenancy with the result that the defendant owns them as the surviving tenant. Compare *Townsend Corporation of America v. Davidson,* 40 *Del.Ch.* 295, 181 *A.2d* 219.

Finally, I consider petitioner's claim to the other personal property in which the deceased had an interest at his death. There was a small sum in a checking account which both opened. It was provided under the contract that "upon the death of either of us the balance, if any, in said account shall vest in the survivor, his heirs, executors, administrators, or assigns".

■ While the quoted language is not as "strong" as that involved in *Walsh v. Bailey,* 41 *Del.Ch.* 420, 197 *A.2d* 331, where the proceeds went to the survivor, there is no evidence in this record to prove some intention other than that reflected in the language of the agreement creating the account. In this situation I believe the language is sufficient to warrant the conclusion that the amount remaining in the account became the absolute property of the survivor, the defendant here.

[8] An issue arose as to certain other personal property in which the deceased had an interest at his death. The record here leaves much to be desired, perhaps because the parties were not too concerned with this aspect of the case. In any event, I believe some of these items can fairly be said to have been held and used jointly in furtherance of an apparent marital arrangement. This is true of the household furnishings. Compare *Simpson v. Simpson,* 404 *Pa.* 247, 172 *A.2d* 168. After all, the defendant worked and contributed to the joint earnings which produced the furnished house in which they lived. I believe such items must be considered defendant's property

as the surviving joint tenant or under the doctrine of equitable estoppel.

■ Other items personal to the deceased (*e.g.*, wrist watch, camera) present a more difficult problem. I cannot say on this record that such items were jointly owned or should be so treated. It follows that they must be considered as passing under the intestate personal property law. If further identification of the items is desired counsel should immediately advise the court.

Counsel should arrange to consult with the court promptly about the form of order to be entered hereon.