543 A.2d 572

**COMMONWEALTH of Pennsylvania**

v.

**James R. STEWART, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 30, 1986.

Filed June 1, 1988.

480

Dean N. Livermore, Jersey Shore, for appellant.

Kenneth Osokow, Assistant District Attorney, Williams-port, for Com., appellee.

Before CIRILLO, President Judge, and ROWLEY and TAMILIA, JJ.*

ROWLEY, Judge:

This case presents the question of whether a custodial parent's mere knowledge of an impending custody hearing and an order entered thereat, in the absence of valid service of process on the parent, is sufficient to bring the parent within the "jurisdiction" of the trial court so as to deprive the parent of the defense provided in section 2904(b)(3) of the Crimes Code to the offense of Interfering with Custody of Children, 18 Pa.C.S. § 2904(a). We hold that it does not.

Appellant was convicted by a jury of violating 18 Pa.C.S. § 2904(a), "Interference with Custody of Children." He appeals the judgment of sentence. Because we hold that the trial court that issued the custody order in question never obtained *personal* jurisdiction over appellant and hence, the defense under § 2904(b)(3) is a bar to the prosecution, we vacate the judgment of sentence.

The relevant facts are as follows. Bonnie Stewart and appellant were married on September 1, 1977. They had two children: Bugsy, born in 1978 and B.J., born in 1980. During late 1980 and early 1981 the couple experienced marital problems. Bonnie Stewart testified that on January 5, 1981 she left the marital residence to move back with her mother. As she was leaving, appellant asked her if he could take Bugsy on a trip to Maryland. She agreed, so long as appellant would deliver Bugsy to the home of Bonnie Stewart's mother as soon as he returned.

Appellant offered contradictory testimony, insisting that he did not say he was taking a trip, and asserting, rather, that he and Bonnie Stewart agreed at separation that appellant would keep Bugsy. Whichever witness the jury believed, Bugsy was not delivered to his mother.

* President Judge Cirillo replaced Judge Wickersham, who was originally a member of this panel, upon Judge Wickersham's resignation from the Court in March, 1987.

When appellant failed to return Bugsy after the trip to Maryland, Bonnie Stewart called the home of appellant's parents. After some difficulty in reaching appellant, she finally was able to speak to him by telephone. She testified that during this conversation, appellant told her she would never see Bugsy again. After this conversation, Bonnie Stewart consulted an attorney.

Bonnie Stewart's counsel filed a Petition for Primary Custody alleging that on or about January 5, 1981 appellant took Bugsy and refused to return him to her. On January 20, 1981, the trial court issued an Order directing appellant to show cause "why primary custody rights should not be established for [Bonnie Stewart] regarding the minor children." The last line of the Order stated: "Pending further Order of Court, the status quo, as alleged herein, shall be maintained."[1] A preliminary conference before a hearing officer was set for February 6, 1981. It is undisputed that appellant was never served with the Petition or the Order.

Bonnie Stewart testified that between January 5th and February 6th she called the home of appellant's parents "often" and that "[a] lot of times I would talk to Bugs." Early in the evening the night before the preliminary conference she called appellant again at his parents' home. When appellant would not allow her to speak with Bugsy, she replied: "[T]hat is all right, because I am getting him tomorrow, tomorrow is the custody hearing."

Appellant did not attend the custody hearing. Rather, he left the Commonwealth, taking Bugsy with him. Appellant's failure to appear at the February 6th hearing resulted in the entry of an order by the hearing officer, placing primary custody of the two Stewart children with their mother, Bonnie Stewart, pending a "hearing on the merits

1. We note parenthetically that although the petition states that appellant "took" Bugsy from his mother, there is no indication on the record that she ever had physical custody of Bugsy after the separation. See *Warman v. Warman*, 294 Pa.Super. 285, 439 A.2d 1203 (1982) (opinion by Montemuro, J., with two Judges concurring in the result) ("custody is in the parent with physical possession of the child").

by the Court." [2] On February 17, no exceptions having been filed, the trial court "Approved" the order. Thereafter, for four years appellant and Bugsy lived under assumed names in various locations until appellant was arrested in Texas on December 12, 1984.

Following his return to Pennsylvania, appellant was charged with violating 18 Pa.C.S. § 2904(a) which prohibits interference with custody of children. Appellant was convicted and sentenced to nine to twenty-four months imprisonment. On this, his direct appeal from the judgment of sentence, he raises nine issues. We address only the issue of whether the trial court had jurisdiction to enter the custody order of February 6, 1981.

The statute creating the offense of interfering with the custody of a child provides, in relevant part:

(a) Offense defined.—A person commits an offense if he knowingly or recklessly takes or entices any child under the age of 18 years from the custody of its parent, guardian or other lawful custodian, when he has no privilege to do so.

(b) Defenses.—It is a defense that:

(1) the actor believed that his action was necessary to preserve the child from danger to its welfare; or

(2) the child, being at the time not less than 14 years old, was taken away at its own instigation without enticement and without purpose to commit a criminal offense with or against the child; or

(3) the actor is the child's parent or guardian or other lawful custodian and is *not acting contrary to an order entered by a court of competent jurisdiction.*

18 Pa.C.S. § 2904 (emphasis added). Appellant argues, *inter alia,* that he is entitled to have the judgment of

---

2. The order also stated: "Respondent was duly served on the 23rd day of January, 1981, by the Sheriff of Lycoming County, personally." However, the uncontradicted evidence shows that this statement of the Hearing Officer was inaccurate. Moreover, the trial court in the criminal proceedings found that service was *not* proper (see discussion infra, p. 486) and on appeal the Commonwealth does not argue that it was.

sentence imposed on him arrested because the order of February 6, 1981, granting custody of Bugsy to Bonnie Stewart was not "an order entered by a court of competent jurisdiction." Therefore, he contends, as Bugsy's father he is entitled to the defense established by the legislature in 18 Pa.C.S. § 2904(b)(3). We agree.

 The term "jurisdiction" comprises both subject matter and personal jurisdiction. As our Supreme Court noted in *Simpson v. Simpson*, 404 Pa. 247, 172 A.2d 168 (1961):

Jurisdiction of subject matter relates to the competence of a court to hear and determine controversies of the general nature of the action before the court; jurisdiction of the person is ordinarily acquired by service upon him of the court's process within the territorial limits of his authority.

*Id.*, 404 Pa. at 251, 172 A.2d at 171. Section 2904(b)(3) of Title 18 provides a defense to a parent or guardian not acting in contravention of an order entered by a court of *competent jurisdiction.* Although the statute does not specify that "competent jurisdiction" includes both subject matter and personal jurisdiction, words used in legislation are to be accorded their common meaning and usage. *Brinkley v. Pealer*, 341 Pa.Super. 432, 491 A.2d 894 (1985). Moreover, penal provisions must be strictly construed, 1 Pa.C.S. § 1928, so as to favor life and liberty. *Commonwealth v. Capitolo*, 324 Pa.Super. 61, 471 A.2d 462 (1984). Had the legislature wished to exclude from § 2904 the requirement that the court entering the order obtain personal jurisdiction, it would have so stated. We therefore construe the term "jurisdiction" as set forth in 18 Pa.C.S. § 2904 to encompass both subject matter and personal jurisdiction.

Our Court has held that "[j]urisdiction of the person may only be obtained ... through consent, waiver *or proper service of process.*" *Slezynger v. Bischak*, 224 Pa.Super. 552, 553, 307 A.2d 405, 406 (1973) (emphasis added). In this case there is not a scintilla of evidence in the record to show

that appellant either consented to the trial court's jurisdiction or waived the requirement of proper service. Thus, the *only* method by which the trial court could have obtained personal jurisdiction over appellant was by means of service of process as required by the law of this Commonwealth.

The means by which personal jurisdiction is obtained over a party by service of process are enumerated in Pa.R.C.P. 402:

(a) Original process may be served

(1) by handing a copy to the defendant; or

(2) by handing a copy

(i) at the residence of the defendant to an adult member of the family with whom he resides; but if no adult member of the family is found, then to an adult person in charge of such residence; or

(ii) at the residence of the defendant to the clerk or manager of the hotel, inn, apartment house, boarding house or other place of lodging at which he resides; or

(iii) at any office or usual place of business of the defendant to his agent or to the person for the time being in charge thereof.

(b) In lieu of service under this rule, the defendant or his authorized agent may accept service of original process by filing a separate document which [certifies that the agent is authorized to accept service on behalf of the defendant].

Pa.R.C.P. 412 provides for an additional means of service:

In addition to the manner of service prescribed by Rule 402(a) in an action for custody, partial custody or visitation or in an action for divorce or annulment of marriage, original process may be served within the Commonwealth in the manner prescribed by Rule 403 governing service by mail.[3]

---

**3.** Adopted June 20, 1985, effective January 1, 1986. While this rule was not in effect at the time Bonnie Stewart initiated the custody action, it continues the prior practice within this Commonwealth. *See* Explanatory Comment preceding Pa.R.C.P. 400.

It was established at trial that service of the petition for custody was attempted under Pa.R.C.P. 402(b). However, testimony revealed that such service was unsuccessful because the attorney served had not entered his appearance on behalf of appellant.

Attorney Richard Callahan testified that he had accepted service of the petition on January 23, 1981. Mr. Callahan did not recall why he accepted service of that particular petition. However, he stated that he would accept service of a petition if he recognized that his partner previously had done work for the party. Attorney Anthony Miele, Mr. Callahan's partner at the time, testified that he had represented appellant's parents and two of appellant's sisters on various matters since the 1960's. But neither Mr. Miele nor Mr. Callahan had entered an appearance on behalf of appellant when service was accepted.

Soon after Mr. Callahan improperly accepted service, counsel for Bonnie Stewart stopped him outside the court house and asked why he had accepted service. Mr. Callahan testified:

> [Counsel for Bonnie Stewart] was a little upset about it, that I accepted service and yet we did not represent the fellow I had accepted service for, and I told her at the time if she was that concerned about it, that she should have had the sheriff take it and give it to him because someone would have had to give instructions to the prothonotary's office to ask us to accept service, and that would have had to been her or whoever filed that petition.

It is abundantly clear that service of process was not achieved. The trial court recognized as much during the trial, when it charged the jury:

> [T]he Rules of Court would require that the Defendant be personally notified of the February 6th proceeding. The notice should be personally delivered to him. There was testimony, and I think it is uncontested that an attorney or law firm accepted service of the papers. However, the testimony I think is also uncontested that those attorneys had not been specifically authorized by

the Defendant to accept service, and they did not, and in fact, had not entered their appearance on his behalf. The question arises then as to what is the effect of that defective service, as you would have to find, *the Court would have to find the service was not proper,* what is the effect of that on the existence of the custody orders that came out dated the 17th of February.

(Emphasis added.) Despite the finding that appellant was not properly served, the trial judge subsequently held, *"knowing* of the [January 20th] Order, [appellant] would not be entitled to simply ignore it." [4]

■ The dissent, too, is of the opinion that *actual notice,* in the absence of proper service, is sufficient to bring a respondent within the jurisdiction of the trial court. This position is untenable for the reason that it ignores the crucial importance service of process plays in our judicial system. Our Supreme Court has held that "[t]he rules relating to service of process must be strictly followed, and jurisdiction of the court over the person of the defendant is dependent upon proper service having been made." *Sharp v. Valley Forge Medical Center and Heart Hospital, Inc.,* 422 Pa. 124, 127, 221 A.2d 185, 187 (1966). Therefore, under the law of this Commonwealth we must find that the "effect" of the defective service is that the trial court never obtained personal jurisdiction over appellant. Particularly when a person's liberty is at stake, as here, courts must uphold the fundamental concept that a party need answer only those actions against him in which jurisdiction over his person is properly obtained.

At the time Bonnie Stewart filed her Petition for Primary Custody in January, 1981, the Uniform Child Custody Jurisdiction Act, 42 Pa.C.S.A. § 5341 *et seq.* ("UCCJA"),[5] had

4. The only basis of record of appellant's knowledge was Bonnie Stewart's statement to her husband over the telephone on February 5th that a custody hearing would be held the following day. We note that there is no indication of record that appellant was ever informed of the time and place of the proceeding.

5. Act of October 5, 1980. P.L. 693, No. 142, § 201(a), *et seq.,* as amended.

recently been adopted by the legislature of this Commonwealth. In 1981, the Civil Procedural Rules Committee of our Supreme Court drafted proposed new rules governing custody, partial custody and visitation of minor children. The proposed rules appeared in the *Pennsylvania Bulletin* on January 31, 1981. Our legislature adopted the new rules on December 10, 1981, effective July 1, 1982.

The UCCJA primarily addresses the elements necessary for the courts of Pennsylvania to assume subject-matter jurisdiction over a case, particularly where other states are involved in the matter.[6] The Rules of Civil Procedure, by contrast, specifically addressed the requirements of service in custody actions which are a necessary prerequisite to obtaining *personal* jurisdiction:

**Rule 1915.4.** Service. Proof of Service.

(a) Within the Commonwealth, the complaint and order may be served upon the defendant

(1) by the sheriff or a competent adult in the manner provided for the service of a writ of summons in assumpsit; or

(2) by the sheriff or a competent adult sending the defendant a copy of the complaint and order by registered mail, restricted delivery, return receipt requested. Service by mail is complete upon the return of the of the registered mail receipt personally signed by the defendant or other evidence of delivery to the defendant satisfactory to the court; or

(3) in such manner, including publication, as the court by special order shall direct.

* * * * * *

Pa.R.C.P. 1915.4(a) (repealed, 1985). This Rule was rescinded after three years and a note immediately thereunder now refers attorneys to Pa.R.C.P. 412. *See, infra.* Although Rule 1915.4 as quoted was not yet in effect at the time Bonnie Stewart filed her petition, we rely upon it to show that our Supreme Court and legislature never had the

---

**6.** *See* Note, *JURISDICTION—Uniform Child Custody Jurisdiction Act,* 51 Temple L.Q. 139 (1978).

intention to do away with the procedural requirements of service of process in custody cases.

We would add that the dissent's reliance on the case of *Fatemi v. Fatemi*, 371 Pa.Super. 101, 537 A.2d 840 (1988) for the proposition that actual notice is sufficient to bring appellant within the jurisdiction of the court, is misplaced. Personal jurisdiction over the father was never an issue in *Fatemi*. In that case both parents had been within the court's jurisdiction for at least four years. *See Fatemi v. Fatemi*, 339 Pa.Super. 590, 489 A.2d 798 (1985). Moreover, the actual notice, which our Court found to be sufficient, related only to notice of a contempt proceeding, held only after several orders had been entered by the trial court during the protracted history of litigation between the parties. The case at bar, by comparison, was at the earliest stages of litigation, and personal jurisdiction had not yet attached.

The record in the case at bar is replete with evidence that Bonnie Stewart knew of appellant's exact whereabouts during the one-month period between separation and the preliminary conference. It flies in the face of our system of justice to penalize appellant for Bonnie Stewart's failure, or more accurately, failure of her counsel to have appellant properly served.

We strongly condemn appellant's actions in depriving Bugsy's mother of a relationship with her child. By his unilateral decision to remove Bugsy from the Commonwealth, appellant robbed his wife and child of the nurturing love, support and companionship which is the core of the parent-child relationship. Nevertheless appellant has not committed an offense actionable under 18 Pa.C.S. § 2904. A court without personal jurisdiction over a defendant is powerless to act, and any order entered thereby must be rendered a nullity. Under the unique facts of this case, the orders were *not* entered by a court of competent jurisdiction, i.e. one which has obtained personal jurisdiction over the parties. Therefore, appellant has established a valid

defense to the crime with which he was charged, under 18 Pa.C.S. § 2904(b)(3).

Judgment of sentence vacated. Appellant discharged.

TAMILIA, J., files a dissenting opinion

TAMILIA, Judge, dissenting:

I respectfully dissent to the holding of the majority and would affirm the judgment of sentence imposed by the trial court.

Appellant was convicted by a jury of interfering with Custody of Children, 18 Pa.C.S. § 2904, as a result of taking his child and keeping him for a period of four years in violation of a custody Order. Following the jury verdict, he was sentenced to a period of incarceration of nine to twenty-four months. The thrust of the charge was that appellant, the father of a male child known as "Bugsy" and born May 3, 1978, took Bugsy from the jurisdiction in violation of temporary and final Orders awarding custody to the mother. Appellant held the child in various locations in the states of Maine, Pennsylvania, New York and Texas from January of 1981 through July of 1984.

The appellant raises nine issues [1] in his appeal, all of which were considered and properly resolved by the court below. I would rely on the decision of the Honorable Thomas C. Raup in the trial court but believe further amplification to be in order on the issue of the existence of the court Order and appellant's knowledge of it, the issue as to the statute of limitations as a defense and appropriateness of sentence. The majority would find no valid Order existed as personal notice was never given of the pendency of a custody action.

As to the first issue, appellant maintains there could be no "taking" within the intent of the statute (18 Pa.C.S. § 2904) if there had been no court Order in existence prior

---

1. We deliberately focus our attention on the basic issues in this case as appellant is in violation of Pa.R.A.P. 2116(a) which limits Statement of Questions Involved to one page.

to the time the child was taken. The rationale is that prior to the existence of a court Order, both parents have an equal right to custody of the child. That argument is sound except where the court has acquired jurisdiction to enter an Order by the filing of a complaint with notice to the respondent and thereafter a valid Order was entered. Notice can be established by personal service on the party or his counsel or by proof of actual knowledge by the party that he knew of the time, place and nature of the proceeding. The night before the hearing of February 6, appellant was told by appellee (by phone) of the hearing.

The evidence in this case was clear and convincing, if not overwhelming, that appellant knew there was to be a custody hearing on February 6, 1981, and that a preliminary Order of January 1981 had preserved the status quo by keeping primary custody with the mother. This case is very similar to *Fatemi v. Fatemi*, 371 Pa.Super. 101, 537 A.2d 840 (1988) as to notice, as in that case, personal notice was never given but actual notice was attributed to the father, who absconded with the child (Majority Opinion, Cirillo, P.J.; Concurring Opinion, Tamilia, J.). Neither appellant or his counsel appeared before the master or court, and on that date, February 6, the court entered a custody Order in favor of the mother.

The subsequent behavior of appellant and his family in traveling from state to state and surreptitiously slipping in and out of Pennsylvania after appellant's mother, May Stewart, was notified by Lenore Urbano, appellee's attorney, of the Order prior to February 27, 1981, (May Stewart was later correctly designated by the court as an unindicted co-conspirator) is convincing evidence of actual notice of the court Order and retention of the child in face of that Order. The Order itself must be considered unassailable as having been properly entered. The appellant had his opportunity to be heard and chose flight and concealment to avoid its implications. For four years he concealed himself and the child in Maine, New York and Texas and would only permit brief visits with the child by the mother, under his absolute

control, until he was arrested by the F.B.I. in Texas. The taking occurred once the Order was entered and he acquired knowledge of it. Once it became clear that appellant had actual knowledge of the Order, "a taking" is established, as was correctly concluded by the trial judge and jury.

The second issue flows from the first in that the appellant alleges the taking occurs, for purpose of the two-year statute of limitations, as of the initial physical control exercised in January 1981. I do not agree. The interference with custody legislation was implemented to stop child snatching. This restrictive interpretation of the statute of limitation posited by appellant would encourage it. The personality capable of taking a child and concealing it from the other parent is motivated by obstinacy, hate and anger and frequently control over the child becomes the core of his existence and the greatest revenge that can be extracted is deprivation of the child from the other party. To hold that the statute runs two years from the initial taking, rather than when the taking ceases by return, places the wrongdoer at risk for only two years, a risk many would consider well worth the effort. The trial court correctly held this to be a continuing offense. The trial court referring to the comments of the Joint State Government Commission, concerning section 2904, held that the conduct which was to be prevented by the statute was long term interference and not sporadic brief acts; therefore, the statute of limitations would not begin to run until the defendant's course of conduct is terminated. Finally, the trial court held that the appellant was notified of the Order in July 1984 while in New York, which brings him within two years of the statute at any rate. It was at that time that he fled from New York, stopping in Pennsylvania, thereafter alighting in Texas.

Finally, appellant alleges an excessive sentence. While appellant has failed to comply with the requirements of *Commonwealth v. Tuladziecki*, 513 Pa. 508, 522 A.2d 17 (1987) in presenting a statement of reasons necessary for this Court to review the discretionary aspects of the sen-

tence, because the Commonwealth has raised no objections, I would consider it.

The range of sentence employed by the court is within the guideline ranges and does not exceed the statutory limits. The sentencing record discloses that the court considered the gravity of the offense and its impact on appellee and her children. This crime is one of extreme emotional cruelty to the mother and the devastation psychologically that it imposed on the child, to deny him contact with his mother, alienate him from her and his sibling, deny him important educational opportunities, and surround him with an atmosphere of concealment, subterfuge and flight, is incalculable. Many crimes of violence do not leave this emotional impact lingering in the lives of their victims. I believe the trial court considered the appellant and his past, his violence physically and psychologically and agree with his belief that a strong impact must be made on appellant to prevent future behavior of a similar nature. I find no error in this sentence. I believe the trial court has carefully disposed of the remaining substantive and legal issues and would affirm the judgment of sentence.