593 A.2d 1279

COMMONWEALTH of Pennsylvania, Appellee,

v.

Donald D. RICHARDS, Appellant. (Three Cases).

COMMONWEALTH of Pennsylvania, Appellee,

v.

Donald D. CRAVENS, Appellant. (Three Cases).

Superior Court of Pennsylvania.

Argued April 24, 1991.

Filed June 25, 1991.

James V. Fareri, Stroudsberg, for appellants.

Curtis Rogers, Asst. Dist. Atty., Stroudsberg, for Com.

Before KELLY, POPOVICH and HOFFMAN, JJ.

POPOVICH, Judge:

This is an appeal from two judgments of sentence entered in the Court of Common Pleas of Monroe County. We affirm in part and reverse and vacate in part.

The appellants Donald Richards and Donald Cravens have adequately set forth the facts and procedural history of this case. Thus, we adopt their statement for purposes of appeal.

The within matter concerns the consolidated Appeals of Donald D. Richards and Donald D. Cravens from a determination by Judge Peter J. O'Brien of the Monroe County Court of Common Pleas, that said appellants are guilty of certain summary criminal violations.

Donald D. Richards (hereinafter "Richards"), is the principal of D & R Livestock, Inc., a Tennessee corporation, [and] is the registered owner of a certain tractor and trailer which was involved in a motor vehicle accident in Monroe County on December 26, 1989. The driver of said tractor trailer at the time of said accident was Defendant–Appellant, Donald D. Cravens (hereinafter "Cravens").

The accident which occurred on December 26, 1989 involved a car and the above-described tractor trailer. (R.13a.) As Cravens was driving south on Route 209, the driver of a motor vehicle proceeding in a northerly direction lost control, spun out and came directly into the southbound lane, striking the front of the vehicle driven by Cravens. (R. 28a.)[1] As a result of the accident, the two individuals in the motor vehicle were killed, a mother and an infant. (R. 13a–14a; 28a.)

Cravens was not issued any citations for any moving violations concerning the fatal accident. (R. 29a.) However, Pennsylvania State Police Trooper Ustonofski, was dispatched to conduct an inspection of the tractor and trailer operated by Cravens. (R. 14a.)

1. Although it is not material to our discussion, we note that Cravens testified that he was travelling northbound. R. 61a.

As a result of an inspection performed by Trooper Usto-nofski of the tractor and trailer, the Trooper issued three summary citations each to Cravens and Richards. (R. 1a–6a.)

The citations received by Cravens and Richards are identical except for the identity of the defendant. All of the citations cite § 4107(b)(2) of the Pennsylvania Motor Vehicle Code, the statute which has been violated. *Id.* Cravens and [Richards] each received a citation which describes the "Nature of the Offense" as follows: "Violation of Title 67 (Sect. 396.3) [—] Trl axle brakes out of adj." (R. 1a, 4a.) The other two citations received by both defendants relate to the alleged failure of Cravens to maintain what Trooper Ustonofski described as a "duty log" for the vehicle operated by him on December 26, 1989. A "duty log" is a record of duty status that is completed by [the] driver to demonstrate [that] "he has not been driving too long in a consecutive period of time." (R. 22a.) The first of these citations describes the "Nature of the Offense" as follows: "Violation of Title 67 (Sect. 395.8K3) [—] failed to have record of duty status for day of exam & previous 7 days." (R. 3a, 6a.) The second of these citations relating to the failure to maintain a log book describes the "Nature of the Offense" as follows: "Violation of Title 67 (Sect. 395.8A) [—] [Defendant] failed to maintain a record of duty status." (R. 2a, 5a.)

Both Defendants pled not guilty to all of the citations and [a] summary trial was conducted before District Justice Debby York, who found the Defendants guilty on all six citations. A timely Appeal was filed to the Monroe County Court of Common Pleas, pursuant to the Pennsylvania Rules of Criminal Procedure, and [a] trial *de novo* was conducted before the Honorable Peter J. O'Brien, Judge, Monroe County Court of Common Pleas, on July 18, 1990. (R. 7a, et. seq.) At the conclusion of the hearing Judge O'Brien entered Orders dated July 18, 1990 finding the Defendants guilty of all summary offenses

154

charged and imposing a fine of One Hundred Ten ($110.00) Dollars as to each citation. (R. 106a.)

Timely Post–Verdict Motions were filed by both Defendants–Appellants on July 25, 1990. The Court, without briefs or oral argument, issued an Opinion and Order dated August 15, 1990 denying the Post–Verdict Motions.

Appellants' brief, at 4–7. In addition, a final order was entered and this appeal followed.

The parties raise three issues for our consideration:

I. Should the hearing Judge have rejected the testimony of Trooper Ustonofski as to his measurements of the "push rod stroke" of the trailer brakes, as (1) such measurements were not performed in compliance with applicable Federal Regulations, and (2) said measurements were not taken in accordance with the method and procedure outlined in the Trooper's own handbook which the Trooper testified was authoritative?

II. Should the citations relating to the failure of the Appellants to maintain a "duty log" be dismissed as the statutory section set forth in such citations, 75 Pa.C.S.A. § 4107(b)(2), does not criminalize the failure to maintain a "duty log?"

III. Should three of the four citations relating to the failure to maintain a "duty log" be dismissed, as all four citations were issued for the same offense and three of such citations are not supported by applicable regulations?

Appellants' brief, at 3.

At the onset, we note that the appellants' second issue was not specifically preserved in post-verdict motions and therefore is deemed waived. *See Commonwealth v. Cardona,* 316 Pa.Super. 381, 463 A.2d 11 (1983) (all issues not raised properly in post-verdict motions are waived on appeal). *See* Pa.R.Crim.P. 1123; Pa.R.A.P. 302(a). However, since a discussion of this claim is necessary to resolve the appellants' third issue, we will evaluate the appellants' contention in this instance.

The appellants first argue that Trooper Ustonofski did not comply with Federal regulations in measuring the "push rod stroke" of the trailer brakes. They contend that failure to comply exactly with the regulations resulted in an inaccurate measurement which in turn led to the issuance of two criminal citations. Further, the appellants note that criminal regulations must be strictly construed and that, here, they were not. We agree.

Clearly, the trial court based its decision in this case on credibility determinations. *See* Trial court opinion, at 3–4. While this Court is cognizant of the well-established rule that the trial court enjoys broad discretion in weighing the witnesses' testimony,[2] this appeal does not ask us to reassess credibility determinations. Rather, we are called upon to resolve a question of law.

We have conducted a thorough review of the record in this case and we have evaluated the applicable law. It is evident that the inspecting trooper did not measure the trailer brakes in accordance with the pertinent Federal regulations. Instead, the trooper used his own methods, both to release the braking system and to measure the push rod stroke. Although the trooper testified that the procedures which he employed were acceptable (R. 18a), we cannot be sure that his actions did not affect the accuracy of the measurements. *See* R. 19a–20a (discussing "maximum stroke"); 49a–51a; 98a. Finding that the record provides inadequate support for the appellants' conviction, we must vacate the judgments of sentence as they relate to this issue.

▪ The first citation issued to the appellants indicated that the trailer brakes were out of adjustment in violation of 75 Pa.C.S.A. § 4107(b)(2) and 49 C.F.R. § 396.3.[3] 49 C.F.R. § 396.3(a)(1) provides:

2. *Commonwealth v. Garcia*, 370 Pa.Super. 132, 535 A.2d 1186 (1988).

3. The Pennsylvania Department of Transportation has promulgated regulations pertaining to vehicle inspection, repair and maintenance. These regulations adopt many of the criteria set forth by the Federal

(a) General—Every motor carrier shall systematically inspect, repair, and maintain, or cause to be systematically inspected, repaired, and maintained, all motor vehicles subject to its control.

(1) Parts and accessories shall be in safe and proper operating condition at all times. These include those specified in Part 393 of this subchapter and any additional parts and accessories which may affect safety of operation, including but not limited to, frame and frame assemblies, suspension systems, axles and attaching parts, wheels and rims, and steering systems.

Appendix G to subchapter B of 49 C.F.R. § 396 is titled "Minimum Periodic Inspection Standards" and provides in part:

(5) Readjustment limits. The maximum stroke at which brakes should be readjusted is given below. Any brake ¼″ or more past the readjustment limit or any two brakes less than ¼″ beyond the readjustment limit shall be cause for rejection. *Stroke shall be measured with engine off and reservoir pressure of 80 to 90 psi with brakes fully applied.* (Emphasis added).

*Id.* at 1.a.(5).

Trooper Ustonofski testified repeatedly that the reservoir pressure was charged to 110 psi at the time he measured the push rod stroke. R. 18a–19a; 43a–44a; 46a. As we have stated previously, the record is devoid of indication that this derogation was harmless.[4] Thus, we must conclude that the trooper's failure to comply with the above requirement may have resulted in an incorrect reading, in which case a criminal citation may have been issued improperly.[5]

Highway Administration. *See* 75 Pa.C.S.A. § 4101. *See* 49 C.F.R. § 396. *See* R. 34a, 50a.

4. *Cf.* R. 18a (the trooper stated that in his opinion, the psi did not affect the brake inspection). *See* R. 49a–51a (the record indicates that the violation pertaining to the brakes related solely to the distance of the push rod stroke). *See* 49 C.F.R. § 396.3.

5. The allowable maximum push rod stroke for the trailer was two inches. The measurement of the push rod stroke is the difference

Also, Trooper Ustonofski testified that he inspected the trailer pursuant to the Uniform Driver/Vehicle Inspection Manual, which provides in pertinent part:

*Cam Brakes.* With the brakes applied by a full pressure application, measure from the face of the brake chamber to a *mark* made on the brake chamber push rod *when the brakes were released.* (Emphasis added).

The trooper indicated that he charged the air system with a full pressure application of 110 psi (R. 46a–47a) and released the brakes. R. 15a, 16a, 18a. *See also* R. 53a–54a, 92a. However, he also stated that he did not make any marks on the brake chamber push rod when he calculated the measurements. R. 89a–90a. Although the appellants' expert witness stated that there is no "correct" way to measure the push rod stroke and that not everyone "marks" the push rod (R. 80a, 82a), we cannot simply dismiss the trooper's own testimony that he did not follow, with exactitude, the directions in his manual in this situation. Absent overwhelming evidence to the contrary, we must conclude that where criminal citations were issued for brake violations amounting to between ⅛" and ½" the trooper's measurements should have been in direct conformity to the above rules.[6]

This is not to undermine the importance of vehicle safety laws. Rather, in this particular case, it appears that the

between the location of the push rod when the brakes are applied and when the brakes are released. When the trooper performed the test, he was required to measure the push rod in two positions and then calculate the difference to arrive at a figure. He stated, "[w]e put a ruler against a firm, immovable part near the brake chamber, and the brakes are applied, and the ruler measures the amount of push-rod travel. The push-rod measures the length of the chamber connected to the slack adjuster when the brake bottoms out in the drums. We measure that measurement." The trooper's conclusion was as follows. "On the trailer, the right front axle was two and one-eighth inches; the right rear was two and a quarter inches; the left front axle was two and a quarter inches; and the left rear was two and a half." R. at 21a. *See also id.* at 20a.

6. The trooper testified that he only recorded his final figures. He did not make any additional notes regarding his computations and could not testify as to the original measurements (before he calculated the differences) during cross-examination at trial. R. 38a–41a.

directions were unambiguous and required that a mark be made on the brake chamber push rod for purposes of accurate measurement. As the appellants aptly note, "[t]he failure of the Trooper to comply with regulations in performing the measurements is crucial, because the slightest error in performing the measurements would cause the vehicle to be "out of service" under the Federal regulations." Appellants' brief, at 14.[7]

We are also persuaded by the appellants' argument that criminal provisions must be strictly construed. *Commonwealth v. Wooten*, 519 Pa. 45, 545 A.2d 876 (1988); *Commonwealth v. Stewart*, 374 Pa.Super. 479, 543 A.2d 572 (1988); *Commonwealth v. Godsey*, 342 Pa.Super. 24, 492 A.2d 44 (1985) (any doubt in construing a penal statute must be resolved in favor of the accused); *Commonwealth v. Cluck*, 252 Pa.Super. 228, 381 A.2d 472 (1977). *See also* 1 Pa.C.S.A. § 1928(b)(1). The record reveals that the trooper did not strictly comply with either the Federal regulations or his handbook. During the trial, he indicated that he relied on his own experience and on the fact that he needed to release the brakes while guarding his own safety. R. 18a, 46a. The trial court believed the trooper's testimony to the effect that he conducted himself properly and that he interpreted the applicable provisions reasonably. While we do not dispute that any of this is true, we are nonetheless asked to decide a narrow issue on appeal. In light of the fact that the pertinent sections before us are specific and clear in their mandates, along with the fact that the appellants raise the issues directly, we hold that the trooper's noncompliance with the applicable provisions was material. The criminal citations upon which the appellants were convicted were premised on flawed tests. Thus, the convictions cannot stand.

■ The appellants next challenge their convictions for failing to maintain a duty log. First, they argue that duty logs are not equipment within the meaning of 75 Pa.C.S.A. § 4107(b)(2). While this may be true, § 4107(b)(2) provides

7. *See also* R. 48a.

that it is unlawful for any person to "[o]perate, or cause or permit another person to operate, on any highway in this Commonwealth any vehicle or combination which is not equipped as required under this part or under department regulations *or* which is otherwise in an unsafe condition *or in violation of department regulations."* (Emphasis added). Since the regulations clearly contemplated the necessity of duty logs, we must assume that the legislature intended to include them in this section. 49 C.F.R. § 395.8.

■ Each appellant received two citations for the driver's failure to present his duty log to Trooper Ustonofski. Although the driver testified that he covered the victims' bodies with his coat; that his coat was removed with the baby; that the log book was in his coat pocket at the time; and that he never retrieved his coat after the accident, the trial court rejected his testimony. R. 63a–64a, 66a–67a. This, it was free to do. Trooper Ustonofski testified that the driver reported that the owner did not require him to keep a log book. R. 96a.

■ Each appellant was cited for a violation of 49 C.F.R. § 395.8, which provides in relevant part:

(a) Every motor carrier shall require every driver used by the motor carrier to record his/her duty status for each 24–hour period using the methods prescribed in either paragraphs (a)(1) or (2) of this section.

The appellants argue that this provision applies only to the motor carrier and not to the driver. We disagree. Paragraph (1), referred to in section (a), above, provides:

Every *driver* who operates a commercial motor vehicle shall record his/her duty status, in duplicate, for each 24–hour period....

(Emphasis added). Clearly, a driver may be charged with a violation of the above provision. More pointedly, the section is titled "Driver's record of duty status." Citations to both appellants were rightly issued.

■ Both appellants received citations for violating 49 C.F.R. § 395.8(k)(3), which provides:

(k) Retention of driver's record of duty status. (3) The *driver* shall retain a copy of each record of duty status for the previous 7 consecutive days *which shall be in his/her possession and available for inspection while on duty.*

(Emphasis added).[8] Here, we agree with the appellants that the owner cannot be cited .for a violation of this section because, by its clear language, the terms of this regulation apply to the driver of the vehicle. *See also* R. 37a. Thus, we vacate the judgment of sentence against the trailer owner, Donald Richards, on this count.

For the foregoing reasons, we affirm in part and reverse and vacate in part.

Affirmed in part and reversed and vacated in part consistent with this Opinion.

---

8. We treat these provisions separately as they are specifically delineated in the regulations.