2008 ND 201

**Lisa COLOMBE, Plaintiff and Appellant**

v.

**Jessy CARLSON, Defendant and Appellee.**

**No. 20080023.**

Supreme Court of North Dakota.

Nov. 19, 2008.

Thomas M. Disselhorst (argued), Disselhorst Law Office, Bismarck, ND and Janet V. Keymetian, Bismarck, ND, for plaintiff and appellant.

Anne E. Summers (argued), Dyer & Summers, P.C., Bismarck, ND, for defendant and appellee.

MARING, Justice.

[¶ 1] Lisa Colombe appeals a district court judgment awarding Jessy Carlson sole legal and physical custody of their children. Carlson moved to dismiss Colombe's appeal, arguing this Court should employ the fugitive dismissal rule. We grant Carlson's motion to dismiss, holding Colombe forfeited and abandoned her appeal by absconding with the children and disregarding the district court's orders.

I

[¶ 2] Colombe and Carlson are the parents of one daughter and one son. The parties were never married and separated before the son's birth. Colombe filed a complaint and a motion for an interim order seeking sole custody, supervised visitation for Carlson, and a determination of Carlson's child support obligation. Colombe alleged the daughter had been sexually abused by a male visitor in Carlson's home. Carlson filed an answer and counterclaim requesting joint legal custody of the children, with Colombe having primary physical custody. Carlson disputed the need for supervised visitation.

[¶ 3] At the hearing on the motion for an interim order, the parties presented a stipulated interim agreement regarding custody and visitation. The parties agreed that the daughter would receive counseling and the parties would follow the counselor's recommendation pertaining to visitation. Some counseling took place, but Colombe alleges Carlson did not attend. Carlson alleges Colombe denied some of Carlson's visitation because of his failure to attend the counseling, concerns over the daughter's safety, and financial difficulties.

[¶ 4] Carlson moved for a finding of contempt and for emergency enforcement of the interim order, alleging Colombe had denied him visitation. Carlson requested emergency disposition on his motion for contempt on the grounds that Colombe was moving to the Rosebud Sioux Indian Reservation with the children and he would never see them again. The court issued a restraining order and order for immediate transfer of custody prohibiting Colombe from leaving North Dakota with the children, transferring custody of the children to Carlson for the pendency of the action, and giving Colombe supervised visitation.

[¶ 5] Colombe moved for revocation of that order, stating she had not denied Carlson visitation, was not moving to the Rosebud Sioux Indian Reservation, and informed the court that Carlson was living in South Dakota. The district court vacated the emergency custody order on the grounds it was unaware that Carlson was living in South Dakota. The court ordered the children be returned to Colombe, prohibited either parent from taking the children out of North Dakota, and required all visitations take place in the state.

[¶ 6] On August 24, 2007, Colombe moved to continue the contempt hearing, arguing she had terminated her attorney and needed additional time to secure counsel. The district court denied the motion to continue. Colombe did not appear for the contempt hearing on August 27, 2007. Colombe's attorney appeared at the hearing and requested to withdraw from the case. The district court permitted the withdrawal. Upon completion of the contempt hearing, the court found Colombe had denied Carlson visitation and held her in contempt. The court kept the interim order in place, however, it granted Carlson more visits with the children.

[¶ 7] During the one-month period between the contempt hearing and the trial, Colombe did not permit Carlson to visit the children. Carlson moved for custody of the children, pending final disposition of the case. Carlson informed the court that law enforcement had not been successful in serving Colombe with the court's contempt order. Allegedly, Colombe was living on the Rosebud Sioux Indian Reservation and law enforcement was unable to personally serve her there. Carlson moved to hold Colombe in criminal contempt and issue a pick up and hold order so federal law enforcement could retrieve the children from the reservation. Carlson also requested the court waive the fee to obtain a certified copy of the order to enable law enforcement to carry the order with them in case Colombe was ever off the reservation. The district court granted the motion.

[¶ 8] On September 14, 2007, Colombe moved for a continuance of the trial. Colombe argued she needed more time to find an attorney and prepare for trial. Colombe also requested the district court order a home study to ensure Carlson's home was safe. Colombe informed the court she had an out-of-state attorney assisting her until she could secure another attorney. The court denied Colombe's motion, finding there was insufficient grounds to continue the trial. The court ordered Colombe to bring the children to the Burleigh County courthouse on the date of the trial. The court also informed Colombe that it would not communicate with the out-of-state attorney, because he was not licensed in North Dakota.

[¶ 9] Neither Colombe nor the children were present for the trial. Shortly after the trial began, the district court received a motion from Colombe's out-of-state attorney requesting the court continue the trial, order a home study, and change the forum of the trial to South Dakota. The court orally denied the motion, on the ground it was not properly before the court because the attorney had not complied with Admission to Practice Rule 3. The court noted it was concerned Colombe had absconded the jurisdiction with the children. At the conclusion of the trial, the district court found the best interest factors favored Carlson and awarded custody to him. The court also found no credible evidence of sexual abuse, Colombe had not complied with the visitation schedule, and Colombe had submitted herself and the children to the jurisdiction of North Dakota.

[¶ 10] The court entered a redacted judgment on November 19, 2007. The court ordered sole legal and physical custody of both children to Carlson; ordered Colombe receive supervised visitation for two hours a week; and ordered Colombe to pay child support.

[¶ 11] Colombe appeals the district court's judgment, arguing the district court (1) erred in applying the best interest factors; (2) abused its discretion in denying Colombe's request for a home study; (3) erred in granting Carlson custody of the children without finding a significant change in circumstances had occurred; (4) abused its discretion in denying Colombe's request for a continuance of the trial; (5) abused its discretion in allowing Colombe's attorney to withdraw from the case on the day of the contempt hearing; and (6) abused its discretion in not allowing Colombe's out-of-state attorney to represent her. Carlson moved to dismiss Colombe's appeal, requesting this Court apply the fugitive dismissal rule. This Court ordered that the action on the motion to dismiss be deferred and the matter heard with the merits of the appeal.

## II

[¶ 12] "It is well settled that an appellate court may dismiss the appeal of a defendant who is a fugitive from justice during the pendency of his appeal." *Hires v. State,* 882 So.2d 225, 227–28 (Miss.2004) (citing *Ortega–Rodriguez v. United States,* 507 U.S. 234, 239, 113 S.Ct. 1199, 122 L.Ed.2d 581 (1993)). This Court adopted the fugitive dismissal rule in *State v. Bell,* 2000 ND 58, 608 N.W.2d 232. While we have never extended the fugitive dismissal rule to a civil case, the United States Supreme Court has held courts have the authority to dismiss a civil appeal if the party requesting relief is a fugitive at the time the appeal is pending. *Degen v. United States,* 517 U.S. 820, 824, 116 S.Ct. 1777, 135 L.Ed.2d 102 (1996). Furthermore, "[t]he modern view is to deny appeal in custody cases where court orders have been disobeyed." *Librett v. Marran,* 854 A.2d 1278, 1279 (Pa.Super.2004) (citing *Beemer v. Beemer,* 200 Pa.Super. 103, 188 A.2d 475, 477 (1962)); *see also Sasson v. Shenhar,* 667 S.E.2d 555, 2008 WL 4756655, at \*9 (Va.); *D.C. v. D.C.,* 988 So.2d 359, 2008 WL 2447329, at \*4 (Miss.); *Weaver v. Parks,* 947 So.2d 1009, 1014 (Miss.Ct.App.2006); *Peppin v. Lewis,* 194 Misc.2d 151, 151, 752 N.Y.S.2d 807 (N.Y.Fam.Ct.2002); *Pesin v. Rodriguez,* 244 F.3d 1250, 1253 (11th Cir.2001); *but see Walsh v. Walsh,* 221 F.3d 204, 216 (1st Cir.2000) (declining to apply the fugitive dismissal rule to the facts of that case); *McHan v. McHan,* 59 Idaho 41, 80 P.2d 29, 31 (1938) (holding that the appeal is a matter of right, which appellate courts are not free to deny).

[¶ 13] Courts employ the fugitive dismissal rule because of "the difficulty of enforcement against one not willing to subject himself to the court's authority, the inequity of allowing that 'fugitive' to use the resources of the courts only if the outcome is an aid to him, the need to avoid prejudice to the nonfugitive party, and the discouragement of flights from justice." *Moscona v. Shenhar,* 50 Va.App. 238, 649 S.E.2d 191, 197 (2007) (citation omitted). Likewise, courts have reasoned that an appeal should be dismissed due to an appellant's disobedience of a district court order because "it is contrary to the principles of justice to permit one who has flaunted the orders of the courts to seek judicial assistance." *Beemer,* 188 A.2d at 477. The enforceability of the court's orders is at the center of the fugitive dismissal rule. *Empire Blue Cross and Blue Shield v. Finkelstein,* 111 F.3d 278, 282 (2d Cir.1997). The fact that a party's absence renders the district court's judgment against them unenforceable "weighs heavily in favor of disentitlement." *Id.*

[¶ 14] The United States Supreme Court has cautioned against too freely dismissing a case under the fugitive dismissal rule. *Degen,* 517 U.S. at 828, 116 S.Ct. 1777 ("[T]he sanction of disentitlement is most severe and so could disserve the dignitary purposes for which it is invoked. The dignity of a court derives from the respect accorded its judgments. That respect is eroded, not enhanced, by too free a recourse to rules foreclosing consideration of claims on the merits."). To ensure this rule is cautiously applied, courts have imposed three requirements. *Moscona,* 649 S.E.2d at 198; *Sasson,* 667 S.E.2d 555, 2008 WL 4756655, at \*6. "First, in order to dismiss an appellant's claim due to his or her fugitive status, a connection must exist between the litigant's fugitive status and the litigant's appeal." *Moscona,* 649 S.E.2d at 198 (citing *Ortega–Rodriguez,* 507 U.S. at 249, 113 S.Ct. 1199). "Second, before implementing such a severe sanction, a court must ask 'whether an alternative short of dismissal will render enforcement of the underlying judgment certain and remove the risk of prejudice to the

fugitive's adversary.'" *Id.* (quoting *Matsumoto v. Matsumoto,* 171 N.J. 110, 792 A.2d 1222, 1233 (2002)). Third, the policy concerns underlying the fugitive dismissal rule must be present. *Id.*; *see also Degen,* 517 U.S. at 824–25, 116 S.Ct. 1777 (explaining that courts employ the fugitive dismissal rule to encourage enforcement of court orders, discourage the use of judicial resources only when the court rules in the fugitive's favor, avoid prejudice to the non-fugitive party, discourage flights from justice, and promote the efficient, dignified operation of the courts).

[¶ 15] We recognize that the fugitive dismissal rule should be invoked with great caution and restraint, and application of the rule is the ultimate sanction. However, we conclude that the fugitive dismissal rule is applicable to civil cases and the facts of this case merit such a harsh result.

[¶ 16] The three requirements enunciated in *Moscona* are met here. First, there is a clear connection between Colombe's fugitive status and her appeal. The district court ordered Colombe to keep the children within the jurisdiction of North Dakota and to return the children to the custody of Carlson. Colombe absconded with the children to South Dakota and refused to return with the children, thereby defying the court's orders. She now seeks appellate relief from those court orders. Thus, the connection between Colombe's appeal and her fugitive status is direct and undeniable.

[¶ 17] Second, there is not an alternative short of dismissal that would guarantee the enforcement of the district court's order and remove the risk of prejudice to Carlson. Some courts, in considering whether to dismiss an appeal under the fugitive dismissal rule, have given the appellant a short grace period to return and present the children before the appeal is dismissed. *See Weaver,* 947 So.2d at 1015 (providing a thirty-day grace period); *Stern v. United States,* 249 F.2d 720, 722 (2d Cir.1957) (providing a sixty-day grace period). In Colombe's reply to Carlson's motion to dismiss, Colombe presents an alternative to outright dismissal. Colombe argues this Court should issue a supervisory writ to (1) suspend the appeal for not more than sixty days; (2) order Colombe to appear before the district court with the children within thirty days of the Court's order; (3) direct the district court to appoint a guardian ad litem to immediately take temporary custody of the children; (4) direct the district court to grant supervised visitation to both parents; and (5) direct the district court to appoint a different judge to handle the case. This litany of requests is not a sufficient alternative. Rather, it is Colombe's attempt to set forth conditions for this Court to follow to gain her compliance with the district court's orders. We are not going to engage in such bargaining with a party. *Adoption of Baby Boy Dzurovcak v. Vaughan,* 650 N.E.2d 337, 338 (Ind.Ct. App.1995) ("Courts do not 'bargain' with appellants in this manner."); *Peppin,* 194 Misc.2d at 159, 752 N.Y.S.2d 807 (holding the court will not be "held hostage to the appellants' demands"). Even providing Colombe time to return the children to the district court would not be an adequate alternative short of dismissal. We have no reason to believe Colombe would follow that mandate, given she has not followed other court orders. This also does not remove the risk of prejudice to Carlson. Carlson has not seen his children since August 2007. To further delay, in an effort to negotiate with a fugitive, is something this Court is not willing to do.

[¶ 18] Third, dismissing Colombe's appeal is consistent with the goals of the fugitive dismissal rule. Applying the fugitive dismissal rule to this case encourages

compliance with court orders, promotes the efficient operation of the courts, and discourages flights from justice. *See Degen*, 517 U.S. at 824–25, 116 S.Ct. 1777 (outlining the policy concerns underlying the fugitive dismissal rule). Colombe's refusal to return the children to the jurisdiction is evidence that Colombe would disregard an adverse ruling. *See Pesin*, 244 F.3d at 1253 ("[The mother's] behavior to date leaves little doubt that she would defy an adverse ruling."). If, after deciding the merits of the case, this Court held in favor of Carlson, there is no reason to believe Colombe would return the children to North Dakota in compliance with our order. Rather, it appears Colombe will only follow a court order that is decided in her favor. *See Finkelstein*, 111 F.3d at 282 (declining to "entertain the cause of one who will respond to a judgment only if it is favorable").

[¶ 19] Colombe argues that outright dismissal would not deter future fugitives, because the district court failed to provide a fair forum where the issues could be properly litigated. We reject Colombe's argument. Permitting an appellant who is dissatisfied with the process to disregard the court's order, merely because the appellant determines that order unfair or unjust, would result in an abuse of our court system. Fugitives from the law should not be afforded the protections and privileges of a court system they choose to not follow. *See Adoption of Baby Boy Dzurovcak*, 650 N.E.2d at 338 ("An appellant has no standing to request benefits or rights while holding herself beyond the jurisdiction of the courts."); *D.C. v. D.C.*, 988 So.2d 359, 2008 WL 2447329, at *4 (declining to hear the mother's appeal because she "demonstrated a recurring disregard for the orders of the [trial court]").

[¶ 20] Colombe argues this Court should not apply the fugitive dismissal rule to this case, because she did not have an opportunity to present her case and was not represented by counsel. Colombe fails to acknowledge that she had an opportunity to present her case. Colombe did not appear for either the contempt hearing or the trial. Both of these court proceedings were opportunities to present her case. Furthermore, Colombe was represented by counsel until she terminated her attorney's representation. Colombe cannot now complain that she did not have counsel when her actions left her unrepresented.

[¶ 21] We are cognizant that the fugitive dismissal rule is a "blunt instrument that should only be applied after serious consideration." *Weaver*, 947 So.2d at 1013 (citing *Degen*, 517 U.S. at 828, 116 S.Ct. 1777). Like courts in other jurisdictions, we would impose this rule only in cases in which the fugitive parent has removed or hidden the child, because those cases raise concerns that the fugitive parent will not abide by an unfavorable decision. *Matsumoto*, 792 A.2d at 1236. In this case, Colombe has done just that. She has left the jurisdiction, denied the children visitation with their father, and flouted the district court's orders. On this record, we are convinced Colombe will use the resources of this Court only if the outcome benefits her.

### III

[¶ 22] For these reasons, we hold Colombe may not seek appellate relief from this Court. Accordingly, we grant the motion to dismiss without considering the issues raised in Colombe's appeal.

[¶ 23] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, DALE V. SANDSTROM, and DANIEL J. CROTHERS, JJ., concur.